GEORGE A. BUTLER *vs.* BOARD OF ASSESSORS OF WORCESTER (and a companion case).

Worcester.   October 9, 1968. — November 1, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Taxation*, Real estate tax: assessment.

It was not shown that eight of nine comparable, vacant parcels into which a city had subdivided and sold land for private development as an industrial park were assessed "on a basis discriminating against" the owner of the ninth parcel, although the value per acre at which

the eight parcels were assessed was about one half of the value per acre at which the ninth parcel was assessed, and he was not entitled to an abatement by reason of a disproportionate assessment, where it appeared that his parcel was conveyed to him subject to a renegotiable, short term restriction which was later released by the city, while the other parcels were conveyed subject to burdensome restrictions to industrial uses, and it did not appear that there was a general or broad scheme of discriminatory assessments.

APPEALS from decisions by the Appellate Tax Board.

*Walter J. Griffin*, for the taxpayer, submitted a brief.

*Henry P. Grady*, Assistant City Solicitor, for the Board of Assessors of Worcester.

CUTTER, J.   On January 1, 1962, and January 1, 1964, Butler owned 5.34 acres of land (the locus) on Boylston Street, Worcester.   The assessors in each year valued the property at $50,000 (or about $9,363 an acre).   Taxes for 1962 and 1964, based on these assessments, have been paid with interest.   Applications by Butler for abatements were denied by the assessors.   Butler then appealed to the Appellate Tax Board under the informal procedure.   See G. L. c. 58A, § 7A (as amended through St. 1945, c. 621, § 3).[1]   A statement of agreed facts was filed, on the basis of which the facts are set forth below.   The Appellate Tax Board gave decisions for the assessors.   Butler appealed.

The locus "is a small portion of a substantial acreage . . . which formerly was occupied as a . . . [city p]oor [f]arm."   In 1959 or earlier the city proposed use of about twenty acres of this farm as an industrial park, "with a view to attracting to . . . Worcester" industrial and manufacturing businesses.   In conferences between city officials (including the chairman of the assessors) and prospective purchasers, it was agreed that this city land would be sold for $5,000 an acre "and assessed at that valuation, at least for the first year or two, and until manufacturing plants had been constructed thereon."   In the deeds to persons other

---

[1] Under the informal procedure an appellant must "file a written waiver of the right of appeal to" this court, "except upon questions of law raised by the pleadings or by an agreed statement of facts or shown by the report of the board."

than Butler, conditions and restrictions (the industrial restrictions) were inserted, limiting the parcels to industrial use and "requiring that plants be constructed within a limited time, or the property was to be re-conveyed to the [c]ity . . . upon refund of the purchase price."

During the course of the development of the area, the city, on August 4, 1960, sold the locus for $77,500 to Butler. The deed of that date contained a restriction that the premises could be used solely for an automobile sales showroom and related purposes, and for a gasoline station. No license had been issued, or promised, authorizing the sale of petroleum products.[2] In 1964, the restriction on the locus was released pursuant to a 1961 vote of the city council authorizing the release, and a license for the storage and sale of petroleum products was issued to Butler. After this was done, a gasoline station was built. Butler sold the locus for $121,595.

Eight comparable properties in the development were sold by the city to others for about $5,000 an acre. They were assessed at essentially that figure in the years 1962 to 1964, until partial construction of buildings had taken place on the parcels. When this happened, the assessments were increased in varying amounts. It is agreed that the "various parcels . . . assessed to the several buyers . . . were all comparable in location, character, value, and use, and all part of the same sub-division."

The record does not indicate that the locus was assessed, either in 1962 or in 1964, at an amount in excess of its fair cash or market value. Indeed, the circumstance that in 1960 Butler paid $77,500 for it is strong indication that the locus was not assessed for more than it was then worth. Butler thus can prevail only if he can establish that the

---

[2] Examination of the original deed to Butler, which is incorporated by reference in the agreed facts, shows that the restriction of the locus was to apply for seven years, but that, if the city sold any of the remaining subdivision area for use for other than commercial purposes, the purchaser could renegotiate the seven-year restriction. The deeds of the other lots in the subdivision required (under the industrial restrictions) that the lots be used for manufacturing purposes only, so there was basis for renegotiating the restriction on the locus.

property has been disproportionately assessed. See *Shoppers' World, Inc.* v. *Assessors of Framingham*, 348 Mass. 366.

In the *Shoppers' World* case (at p. 377), this court said that the taxpayer was attempting "to show a simple form of discrimination against it, viz. that *substantially all* other Framingham properties are, as a matter of policy, assessed at forty-five per cent of fair cash value, while this taxpayer's properties are assessed at a higher percentage of full, fair cash value. The offered proof, if it can be substantiated, . . . outlines a scheme closely similar to the assessment pattern discussed in the *Sioux City Bridge Co.* case [260 U. S. 441, 446]. We hold that it is open to the taxpayer to prove the assessors' *general policy* and *standards of assessment* of other properties or classes of property in relation to full, fair cash value. If the taxpayer establishes improper assessment *of such number of Framingham properties* (at less than fair cash value and on a basis discriminating against the taxpayer) *as to support an inference that there was a scheme of such assessment*, then the assessors will have the burden of going forward to show that there has been no scheme of discriminatory assessment" (emphasis supplied).

In the present cases on the agreed facts, we think that Butler falls far short of showing that the other properties in this subdivision are assessed "at less than fair cash value and on a basis discriminating against" him. There is no showing of a general or broad scheme of discriminatory assessment. The locus was not subject to the industrial restrictions by which the other parcels in the subdivision were bound. Although the locus was subject to a restriction (fn. 2) limiting its use for seven years to certain purposes, the sales of the other lots for industrial use at least permitted the release of the restriction affecting the locus. Indeed, authorization for such a release had been voted by the city council prior to the date (January 1 of each year) as of which the 1962 and 1964 assessments were made. So far as appears from the agreed facts, the differences be-

tween (a) the short term, renegotiable restriction on the locus and (b) the burdensome industrial restrictions on the other lots, may have justified whatever differences there were in the per acre land assessments.

We thus need not decide whether the principles of the *Shoppers' World* case could have been applied, if it had been shown that there were disproportionate assessments within as limited an area as this small subdivision. No issue is before us with respect to the validity of the assessors' advance promises to assess the lots (other than the locus) at $5,000 an acre for a limited period. See G. L. c. 59, § 52. Cf. *Opinion of the Justices,* 341 Mass. 760, 778–780 (urban renewal).

The decisions of the Appellate Tax Board are affirmed.

*So ordered.*