EARL A. BEARDSLEY & another[1] *vs.* BOARD OF ASSESSORS OF FOXBOROUGH.

Suffolk. February 5, 1976. — March 4, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Taxation,* Real estate tax: assessment, abatement; Appellate Tax Board: appeal to Supreme Judicial Court. *Evidence,* Burden of going forward.

A finding of the Appellate Tax Board that a town's board of assessors had assessed certain premises which included a garrison-style

---

[1] Mary E. Beardsley.

house disproportionately for the years 1970 through 1973 was warranted by evidence showing that in the particular development in which the premises were located all of the houses known as "Capes" and "Garrisons" which were sold in the three-year period were assessed collectively at a higher percentage of their collective sale prices than were houses known as "Ranches" and "Splits"; once the taxpayer had proved improper assessments of such a number of properties as to justify an inference that a scheme of discriminatory assessment existed, the assessors had the burden of going forward to disprove the existence of such a scheme, and evidence introduced by the assessors that "Capes" and "Garrisons" sold outside the development collectively had a higher ratio of assessed valuations to sale prices than did "Ranches" and "Splits" sold outside the development tended to support the inference of a discriminatory scheme even though the assessors' evidence did not show disparities so great as those shown by the taxpayers' evidence. [857-859]

APPEAL from a decision of the Appellate Tax Board.

*Thomas M. White* for the Board of Assessors of Foxborough.

*John M. Hall (Edward F. Hines, Jr.,* with him) for the taxpayers.

WILKINS, J. The assessors of Foxborough appeal from decisions of the Appellate Tax Board (board) which concluded that the taxpayers' premises had been assessed at more than their just proportion for the years 1970 through 1973.[2] There was no error.[3]

_____

[2] The parties agreed before the board that certain other appeals would be settled on the basis of the decision in the Beardsleys' appeals.

[3] The taxpayers point out that the assessors made no request for a ruling that the evidence did not warrant a finding of the existence of a scheme of discriminatory assessment. Under G. L. c. 58A, § 13, this court "shall not consider any issue of law which does not appear to have been raised in the proceedings before the board." The question whether the evidence warrants a finding made by the board is a question of law which may be considered by us only where (a) the issue has been raised before the board, (b) a party has requested "findings and report thereon" from the board, and (c) the record contains all the evidence which is necessary for our consideration of the question. G. L. c. 58A, § 13. See *Assessors of Everett* v. *Albert N. Parlin House, Inc.,* 331 Mass. 359, 364-365 (1954). No transcript of

The taxpayers, owners of a garrison-style house, introduced evidence which showed that the premises were in a development of approximately ninety houses, consisting of two-story houses "known as Capes and Garrisons" and one-story houses "known as Ranches or Splits." In 1968, the assessors revalued all the town's real estate, assessing the four different types of dwellings in the same general price range. In 1970, the assessors raised the assessed valuation of the "Capes" and "Garrisons" but left unchanged the 1968 valuations of "Ranches" and "Splits."

The taxpayers introduced an exhibit showing the assessed valuations and sale prices of all properties in the development sold in the years 1970 to 1973, inclusive, separated into two groups (1) "Capes" and "Garrisons" and (2) "Ranches" and "Splits." The exhibit, which is set forth in the margin,[4] was based on six sales in 1970,

---

the evidence is before us, but all the evidence (largely documentary) seems to be set forth in the exhibits and in the board's findings and report. We know from discussion in the board's opinion that the assessors argued to the board that the taxpayers' evidence did not warrant a finding of disproportionate assessment. Because the result would be the same, we have chosen to decide this case on the merits and not on the procedural ground. However, the question whether the evidence warranted a particular finding or a particular ruling of law should be raised by a request filed with the board, and failure to file such a request for a ruling will justify an affirmation of the decision of the board because nothing will be properly before us for review.

[4] *Ratio, Assessment to Selling Price*

| | Ranches & Splits | | | Capes & Garrisons | | | |
|---|---|---|---|---|---|---|---|
| Year | Sales | Assessments | Ratio | Sales | Assessments | Ratio | Difference |
| 1970 | $118,250 | $ 81,760 | 69.1 | $ 67,500 | $ 49,175 | 72.9 | 3.8 |
| 1971 | 36,500 | 23,970 | 65.7 | 160,000 | 117,605 | 73.5 | 7.8 |
| 1972 | 237,329 | 142,500 | 60.0 | 285,000 | 199,280 | 69.9 | 9.9 |
| 1973 | 305,850 | 167,250 | 54.7 | 74,500 | 46,775 | 62.8 | 8.1 |
| | $697,929 | $415,480 | 59.5 | $587,000 | $412,835 | 70.3 | 10.8 |

six sales in 1971, fifteen sales in 1972, and ten sales in 1973. It showed that the "Capes" and "Garrisons" which were sold in each year were assessed collectively at a higher percentage of their collective sale prices than were the "Ranches" and "Splits" which were sold in each of those years.

The assessors introduced exhibits which indicated that in 1971, in 1972, and in 1973, "Capes" and "Garrisons," sold outside the development, collectively had a higher ratio of assessed valuations to sale prices than did "Ranches" and "Splits" sold outside the development. The assessors also introduced evidence showing that the ratio of assessed values to sale prices of "Capes" and "Garrisons" sold in the development in 1971, 1972, and 1973 was higher than the same ratio for all single family houses sold in the town in those years. The evidence introduced by the assessors generally did not show disparities as great as those shown for each year by the taxpayers' evidence.

The board found that "a scheme of discriminatory assessment" should be inferred and that the assessors had not sustained their burden of going forward to show that no such scheme existed. The board found that the degree of discriminatory assessment was that shown for the development in each year for the two categories of houses and granted abatements to the taxpayers accordingly.[5]

The assessors argue that there was insufficient evidence to establish a scheme of discriminatory assessment. However, once a taxpayer proves improper assessments of such a number of properties as to justify an inference that such a scheme exists, the assessors have the burden of going forward to disprove the existence of such a scheme. *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348

---

[5] The abatements were calculated so as to reflect the ratio of assessed values to sale prices shown for "Ranches" and "Splits" sold in the development in each of the years in question.

Mass. 366, 377 (1965). See *Coomey* v. *Assessors of Sandwich,* 367 Mass. 836, 838 (1975). Here the taxpayers proved enough to warrant the board's inference that there was a discriminatory scheme. Not only did they show that "Garrisons" and "Capes" were reassessed upward in 1970, while "Ranches" and "Splits" were not, they also showed that the ratios of assessed valuations to sale prices from 1970 to 1973, inclusive, for "Garrisons" and "Capes" were significantly higher than such ratios for "Ranches" and "Splits." Rather than rebut the inference, the evidence offered by the assessors tended to support it.

The assessors argue that the difference is not substantial enough to justify granting relief and that the number of sales in the development was insufficient to support a finding of disproportionate assessment. Any proven scheme of disproportionality is unacceptable and will justify relief to an aggrieved taxpayer, however small the discrimination in assessment may be. In any event, in this case, the tax abatements averaged over $140 per annum, a significant extra burden on the taxpayers. The evidence showed that the discrimination went beyond the ninety-house development, and, therefore, we do not have to consider whether the evidence relating to the development alone was sufficient to warrant an inference of a scheme of disproportionate assessment. See *Butler* v. *Assessors of Worcester,* 354 Mass. 651, 655 (1968), where we left open the question whether a taxpayer could prove disproportionate assessments on the basis of data relating to a small subdivision.[6]

The assessors make no argument that, in calculating the taxpayers' abatements, the board erred in using the

[6] If the taxpayer only proves the ratio of assessed value to sale price for a small subdivision, he may not have shown enough to warrant an inference that there was a scheme of discriminatory assessment. That depends on whether the number of sales and the pattern of assessments to sale prices resulting from those sales have sufficient statistical validity to warrant the inference.

ratios shown for the development, as opposed to the ratios for the town as a whole.

The decisions of the Appellate Tax Board are affirmed.

*So ordered.*