WILLIAM STILSON *vs.* BOARD OF ASSESSORS OF GLOUCESTER.

Suffolk. December 10, 1981. — April 8, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Real estate tax: assessment, abatement. *Evidence*, Burden of going forward. *Appellate Tax Board*, Appeal.

In a real estate tax abatement proceeding substantial evidence supported the Appellate Tax Board's determination that the reassessment of the taxpayer's property was not a result of a discriminatory scheme. [727-729]

In a real estate tax abatement proceeding before the Appellate Tax Board, certain rulings of the board did not entitle the taxpayer to any relief, where the rulings failed to indicate that he had proved the propositions stated. [729-730]

In a real estate tax abatement proceeding it was error for the Appellate Tax Board to rule that the taxpayer had proved facts sufficient to support an inference that the assessors employed a scheme of disproportionality that discriminated against him where the taxpayer failed to show injury to himself, even assuming a general discriminatory scheme. [730]

In a real estate tax abatement proceeding the Appellate Tax Board's error in ruling that the assessors failed to introduce sufficient evidence to meet their burden of going forward to rebut the inference raised by the taxpayer that the assessors employed a discriminatory and disproportionate scheme of assessment did not, in the circumstances, require reversal of the board's decision upholding the assessment of the taxpayer's property. [730-731]

Where the findings of fact and report of the Appellate Tax Board fully supported and explained its decision in a real estate tax abatement proceeding, the board's delay of fifteen months in issuing the report, and one change in its membership during that time, gave no support to the taxpayer's claim that the report was inconsistent with the board's decision. [731]

In a real estate tax abatement proceeding the Appellate Tax Board correctly concluded, after finding that the taxpayer's property tax had been· paid late, that it lacked jurisdiction pursuant to G. L. c. 59, §§ 64 and 65, to hear the taxpayer's appeal for the fiscal year concerned. [732]

APPEAL from a decision of the Appellate Tax Board.

*Joan A. Lukey* for the taxpayer.

*Janet L. Myers* for the Board of Assessors of Gloucester.

NOLAN, J.  This is an appeal from a decision of the Appellate Tax Board (board) refusing relief from the denial of applications for abatement for fiscal years 1974-1977 on two adjacent parcels (premises) under common ownership in Gloucester.  William Stilson, the taxpayer, argues that he is entitled to relief as matter of law.  He contends that the record contains substantial evidence to support the rulings of law made in his favor by the board but lacks substantial evidence to support the decision of the board for the assessors of Gloucester (assessors).  Stilson also argues that it was error for the board to dismiss his 1976 application for abatement.  There is no reversible error.

In his petition to the board, Stilson alleged that the premises were disproportionately assessed as a result of an intentional discriminatory scheme of the assessors.  The alleged practice was the application by the assessors of a predetermined percentage to a purchase price to determine a new assessment on any property sold, while assessments on all properties not sold remained unchanged.  The board concluded that Stilson failed to sustain his burden of proof as to disproportionate assessment.

We summarize the evidence and the findings of the board.  The premises are improved with a one and one-half story stone and frame building converted from a carriage house to a dwelling prior to Stilson's purchase in 1970.  In 1966, there was a revaluation in Gloucester designed to assess all property at full and fair cash value.  At that time the premises were assessed at $13,850, with $4,880 attributed to the building and $8,970 attributed to the land.  The board found that the reason for this low assessment was that the building was considered a carriage house and not a dwelling.  The board also found that between 1966 and 1970, prior to Stilson's purchase of the building, it was converted to a dwelling.  The conversion was not brought to the attention of the assessors.  Stilson purchased the premises

in February, 1970, for $51,700. The assessed value was subsequently increased to $43,820, which was reflected in Stilson's 1971 tax bill. Stilson applied for an abatement, and upon an appeal to the board, the assessed value was set at $28,870, which remained unchanged throughout all tax years at issue in this case. Stilson filed applications for abatement for fiscal years 1974 through 1977 and appealed the denial of these applications to the board.

There was conflicting evidence as to the reason for the increase in the January 1, 1971, assessed value of the premises. Assessor Ruth A. Goodwin testified that on receipt of a copy of the deed transferring the premises to Stilson, the discrepancy between the purchase price and the assessed value of the premises was noted. She inspected the exterior of the premises and for the first time she learned that the building had been converted to a dwelling and therefore the assessment was increased. The chairman of the board in 1970, Roger Edwards, testified that he could not remember whether any assessor had inspected the premises prior to its reassessment as of January 1, 1971. He also testified that the assessors' policy during 1970 was to reassess a recently sold house at 82-87% of its purchase price. He did not testify that this was a policy of the board subsequent to 1971. Assessor Goodwin denied that it was a policy of the assessors to reassess a recently sold house at 82-87% of its purchase price. Assessor Lewis E. Russell, Jr., who joined the board in 1971, testified that it was not a practice of the assessors automatically to reassess properties sold.

Stilson introduced a sales study prepared by his wife which analyzed all residential sales in Gloucester in 1970. The study showed that of the approximately 347 sales of residential properties in 1970, approximately 203 of these properties were reassessed at a value between 83 and 87% of purchase price. The study contained no information on the assessments of properties not sold in 1970. Stilson also introduced two charts containing information on properties in his residential area, Eastern Point. One chart contained information on the assessed values of properties which were

sold between 1966 and 1977. The other contained information on properties not sold between 1966 and 1977. Stilson introduced photographs of other properties in Gloucester with assessments less than or slightly greater than the premises, in an attempt to show that the premises were disproportionately assessed in comparison with other homes in Gloucester which were larger. He provided no information on the fair cash value of the pictured properties, or of the properties in the comparison charts. The assessors introduced evidence of comparable assessments in an attempt to show that the premises were not overvalued. Stilson introduced no evidence of the fair cash value of the premises.

The board viewed Stilson's appeal as raising two issues: overvaluation and disproportionate assessment. The board decided that Stilson had failed to sustain his burden of proof as to either of these. Stilson states in this appeal that he does not now, and did not before the board, allege overvaluation but relies solely on disproportionate assessment. We, therefore, do not consider the overvaluation issue.

Stilson argues that the board was in error in concluding that he failed to meet his burden of proving disproportionate assessment. A taxpayer claiming disproportionate taxation bears the burden of proving that the assessors systematically assessed properties or a class of properties at a lower percentage of their fair cash value than the percentage applied to the taxpayer's property. *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 377 (1965). Where the taxpayer proves improper assessment of such a number of properties as to justify an inference that a scheme of disproportionate assessments exists, the assessors have the burden of going forward to disprove the existence of such a scheme. *Beardsley* v. *Assessors of Foxborough,* 369 Mass. 855, 858 (1976). The number of properties and the pattern of assessments to fair cash value must have sufficient statistical validity, however, to warrant the inference. *Id.* at 859 n.6. Even when an inference is justified and, therefore, the assessors bear the burden of going forward with evidence to disprove the inference, "[t]he ultimate burden of persuasion,

of course, will remain upon the taxpayer." *First Nat'l Stores, Inc.* v. *Assessors of Somerville,* 358 Mass. 554, 562 (1971).

The board found that the taxpayer failed to meet his burden of proof. It found that the study and photographs introduced by Stilson, while they might be considered as some evidence of a possible scheme of disproportionate assessment, were insufficient to prove a deliberate scheme of disproportionate assessment. The taxpayer's primary evidence of the existence of a class of disfavored property in the tax years 1974-1977 was a study of 1970 sales. The board's conclusion that this study was too far removed in time and did not span a sufficient number of years to prove a disproportionate assessment in the tax years 1974-1977 was warranted as a matter of law. The 1970 survey was four years removed from the earliest tax year at issue. The comparison charts and the photographs of properties in Eastern Point also failed to give any indication of an intentional widespread scheme of discrimination. The board found as a fact that the assessments on the Eastern Point properties, even if wrong, are consistent with honest mistake or oversight on the part of the assessors. The comparison of Eastern Point properties did not include evidence of the fair cash value of the properties.

The evidence, viewed in the light most favorable to Stilson, at most raised an inference of a discriminatory scheme practiced by the city as to 1970-1971. Stilson did not prove that the premises were disproportionately assessed in the years at issue here, 1974-1977. Even for the year, 1971, when the property was reassessed after he purchased it, he did not prove that the property was assessed at a higher ratio to fair cash value than other properties in Gloucester. He did not offer evidence of the fair cash value of his property. This failure of proof was fatal to Stilson's case.

The assessors produced testimony which, if believed, counteracted any inference of a disproportionate scheme raised by Stilson. The assessors testified at length concerning their assessment practices as applied to the Stilson and

other properties. They also testified that properties in Gloucester that were not sold were reassessed on a continual basis if the assessors had reason to believe they had experienced a change in condition. There was also evidence that the assessors annually reviewed all properties in at least one district. The board was entitled to believe the assessors' testimony. In this regard, our review is strictly limited and "we must meticulously avoid weighing the evidence." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 467 (1981). It is settled that the board is "not required to believe the testimony of any particular witness but it could accept such portions of the evidence as appeared to have the more convincing weight." *Assessors of Quincy* v. *Boston Consol. Gas Co.*, 309 Mass. 60, 72 (1941). The board found as a fact that the conversion of the building from a carriage house to a dwelling was sufficient to justify an increase in the assessment and that the assessors did not learn of the change in use until 1970, when Stilson purchased the property. We note that findings of fact made by the board are final pursuant to G. L. c. 58A, § 13 (if there is no error of law), and our inquiry is limited to whether, as a matter of law, the evidence was sufficient to support the findings. *Assessors of Weymouth* v. *Curtis*, 375 Mass. 493, 499 (1978). There is substantial evidence to support the board's findings, and there is substantial evidence to support the board's determination that the reassessment was not a result of a discriminatory scheme. In any event, there was a total failure of proof by the taxpayer of his claim that he was a victim of disproportionate assessment in the tax years at issue.

This case was complicated by the fact that the board allowed certain requests of Stilson for rulings of law which, Stilson argues, contradict the board's decision for the assessors. Stilson contends that the rulings of law allowed by the board entitle him to relief because they are supported by substantial evidence and the decision for the assessors is not supported by substantial evidence. The board allowed seven of Stilson's requests for rulings, which are set out in the

margin.[1] The rulings numbered 1, 4, 5, 6 and 7 state general propositions of law that, if proved by a taxpayer, might entitle him to recover. The rulings, however, do not say that this taxpayer proved the propositions stated and therefore do not, in and of themselves, entitle him to any relief. The rulings numbered 2 and 3 relate to the evidence presented in this case. Ruling 2 states that Stilson met his burden of proving facts sufficient to support an inference that the assessors employed a scheme of disproportionality that discriminated against him. However, because Stilson failed to establish the fair cash value of the premises, he failed to show how he was hurt, even assuming that there was a general discriminatory scheme. Ruling 2 is not applicable to the facts and it was an error of law to allow it. Ruling 3 states that the assessors failed to introduce sufficient evidence to meet their burden of going forward to rebut the inference raised by Stilson. Although Stilson's failure to prove

[1] "1. The practice of systematically reassessing properties sold at a percentage of purchase price, while leaving essentially all other properties at the full and fair cash value level established in the most recent city-wide reevaluation, is a discriminatory and unlawful assessing practice which results in disproportionate taxation.

"2. The appellant met his burden of proving facts sufficient to support an inference that the appellee Board of Assessors employed a discriminatory scheme which caused a number of properties in Gloucester to be assessed at a lower percentage of fair cash value than was his own and on a basis discriminating against him.

"3. The appellee failed to introduce evidence sufficient to meet its burden of going forward to show that there has been no scheme of discriminatory assessment.

"4. It would be no defense to the appellee Board of Assessors that the increased assessments on the appellant's property could be justified, in whole or in part, on lawful grounds, if in fact the increased assessments were the result of a discriminatory scheme.

"5. If a full and fair cash value base has been established for all properties in a city, isolated properties or a class of properties cannot lawfully be removed from that base because they have been the subject of sales transactions while all other properties remain within it.

"6. If the appellant was discriminated against by an unlawful assessing practice, he is constitutionally entitled to an adequate remedy.

"7. A taxpayer who has been the victim of a discriminatory assessing scheme is entitled to have his taxes abated to the level at which they would have been had he not been the victim of such a scheme."

the fair cash value of the premises is fatal to his case in any event, after reviewing the entire record, we conclude that the allowance of ruling 3 was also an error of law. Even if we assume that Stilson introduced enough evidence to raise the inference of a pattern of discrimination, it is clear that the assessors introduced enough evidence of their own to meet their burden, as discussed earlier in this opinion. The board's error in allowing ruling 3, a ruling favorable to Stilson, does not require reversal of the board's decision.

The decision for the assessors and the grant of Stilson's requested rulings of law were promulgated on February 8, 1980. The findings of fact and report were promulgated on May 8 and May 15, 1981, approximately fifteen months later. During this fifteen-month period, the board member who had presided over most of the evidentiary hearings left the board and apparently did not participate in the report, although he had signed the decision. Stilson argues that the fifteen-month delay and the departure of the board member lend support to his position that the report should be ignored because it is inconsistent with the rulings of law. There is no merit to this argument. Contrary to Stilson's assertion, the board did not reverse itself when it promulgated the report. Although the report contradicts the rulings of law that we previously stated were error, it fully supports and explains the board's decision for the assessors. General Laws c. 58A, § 13, allows the board to issue its report after it issues the decision in a case. See *Forté Inv. Fund* v. *State Tax Comm'n,* 369 Mass. 786, 787 n.1 (1976), and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board (1972). The statute does not specify a deadline by which the board must issue its report and fifteen months' delay, although inordinate, was not prejudicial. There is no requirement in the statutes or in the board's own rules that the presiding officer at the hearings must participate in the report. The fifteen-month delay in the promulgation of the report and the departure of the board member do not have any effect on our review of the board's decision.

Stilson's final challenge concerns the board's dismissal of his application for abatement for fiscal 1976. The board found that it did not have jurisdiction to hear this appeal because payment of the taxes was made with interest and was not timely. General Laws c. 59, §§ 64 and 65, provide that when the taxes on a parcel exceed $2,000 the payment of the full amount of the taxes without incurring any interest charges is a condition precedent to the board's jurisdiction over an abatement appeal. The board found, and it is undisputed by Stilson, that an interest payment of $7.50 was actually made on May 6, 1976. Stilson's wife testified, however, that she had mailed a check in the amount of the taxes due before May 1, 1976, and only made the payment on May 6, 1976, because the first check was not received by the tax collector of Gloucester. Essentially, Stilson argues that he should be excused from the statutory requirement of G. L. c. 59, §§ 64 & 65. However, the board has only that jurisdiction conferred on it by statute. *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 492 (1936). Adherence to the statutory prerequisites is essential to an effective application for abatement of taxes. *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745, 747 (1975). In the instant case, after hearing evidence, the board found that the tax bill was paid with interest on May 6, 1976. The board correctly concluded that it lacked jurisdiction to hear the appeal. In any event, since the board's decision for the assessors was correct, the board's dismissal of the 1976 appeal does not affect the outcome of the case.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*