JAMES R. DOWD *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another.[1]

Suffolk. September 15, 1983. — January 18, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security,* Appeal, Findings of fact, Interstate appeal.

Where the record of a hearing held by unemployment compensation au-
thorities in Pennsylvania under procedures established in accordance
with G. L. c. 151A, § 66, was defective by reason of failure of the
Pennsylvania hearing officer to assess the credibility of witnesses or re-
solve conflicts in their testimony as to factual matters, there was no
basis on which a Massachusetts review examiner could conclude that
the claimant, a Pennsylvania resident seeking Massachusetts unem-
ployment benefits, had lacked good cause for late filing of his appeal.
[769-771]

CIVIL ACTION commenced in the Dorchester Division of
the District Court Department on December 10, 1981.

The case was heard by *Outlaw,* J.

*James R. Dowd,* pro se.

*George J. Mahanna,* Assistant Attorney General, for Di-
rector of the Division of Employment Security, submitted a
brief.

LYNCH, J. Pursuant to G. L. c. 151A, § 42, James R.
Dowd appeals from the decision of a judge of a District
Court affirming the decision of the board of review of the
Division of Employment Security (DES), which had upheld
the determination of the review examiner. We reverse the
judgment of the District Court and remand the case to DES
for further proceedings consistent with this opinion.

On July 31, 1981, a claims director in the Quincy employ-
ment security office handed Dowd a notice of disqualifica-

[1] Pneumatic Scale Corporation.

tion for unemployment benefits under the Employment Security Law. See G. L. c. 151A, § 25 (e) (2).[2] At that time, Dowd told her that he would be moving to Pennsylvania and was concerned about the ten-day deadline for filing an appeal. G. L. c. 151A, § 39 (b). She assured him that he could file his claim in Pennsylvania and that the Massachusetts office would forward his records to Pennsylvania upon notification by the Shenandoah office. Dowd reported to the Shenandoah, Pennsylvania, office on August 4, 1981, and again on August 13, 1981, at which time certification for the week ending August 8, 1981, was taken. An appeal was actually taken on August 17, 1981, when Dowd filed a Notice of Interstate Appeal. A hearing was held in Shenandoah on September 15, 1981, in order to determine whether good cause existed for Dowd's failure to request a hearing within the ten-day period during which an appeal may be taken as a matter of right. G. L. c. 151A, § 39 (b).[3] Dowd was present, as was a representative from the Shenandoah employment security office (though not the representative Dowd had spoken with on any of his visits to the office). The electronic recording of the testimony taken at the hearing and the written record were reviewed by a review examiner in Boston on September 28, 1981. The examiner concluded that Dowd's reason for filing his appeal late did not constitute good cause and he affirmed the denial of benefits. The board of review likewise affirmed. Dowd then appealed to

---

[2] The reasons for this disqualification, and whether the disqualification was proper under G. L. c. 151A, are not relevant to this appeal.

[3] General Laws c. 151A, § 39 (b), as appearing in St. 1976, c. 473, § 13, reads in pertinent part: "Any interested party notified of a determination may request a hearing within ten days after delivery in hand by the director's authorized representative, or mailing of said notice, unless it is determined in accordance with procedures prescribed by the director that the party had good cause for failing to request a hearing within such time. In no event shall good cause be considered if the party fails to request a hearing within thirty days after such delivery . . . ."

Dowd's request for hearing was filed more than ten days but less than thirty days after he received notice of disqualification, pursuant to G. L. c. 151A, § 25 (e) (2). This notice contained printed information concerning the right of appeal, including the ten and thirty-day time limitations.

the Dorchester Division of the District Court Department, pursuant to G. L. c. 151A, § 42.

Dowd argues that neither the review examiner nor the board of review made findings of fact with regard to what Dowd considers the material issue — what happened at the Shenandoah office on August 4, 1981. Dowd claims that at that time he was informed that he could not appeal until his records arrived from Massachusetts. He maintains that again, on August 13, he was told that he would have to wait for his records to arrive from Massachusetts before he could file his appeal. We conclude that the procedure followed in this case was defective.

The Interstate Benefit Payment Plan is a program which allows a worker who has lost his job in one State (the liable State) to collect unemployment compensation even though he currently resides in another State (the agent State). 26 U.S.C. § 3304(a)(9)(A) (1976). Both Massachusetts and Pennsylvania participate in this program. G. L. c. 151A, § 66. Pa. Stat. Ann. tit. 43, § 792 (Purdon 1964 & Supp. 1982).

The procedure by which Massachusetts handles the mechanical task of the determination of interstate claims is described in 430 Code Mass. Regs. § 4.05 (1981) as follows: "(a) The agent State shall, in connection with each claim filed by an interstate claimant, ascertain and report to the liable State in question such facts relating to the claimant's availability for work and eligibility for benefits as are readily determinable in and by the agent State. (b) The agent State's responsibility and authority in connection with the determination of interstate claims shall be limited to investigation and reporting of relevant facts."

The procedure adopted by the DES, while reserving to itself the actual decisionmaking, delegates the fact-finding to the agent State. In this case, the significant factual issue was what was said by and to Dowd when he went to the employment security office in Shenandoah. In order to resolve this issue, the credibility of the witnesses must be assessed by the fact finder.[4] Since in this case the examiner in

---

[4] Other types of administrative proceedings do not require this type of judgment. Frequently cases are presented by oral argument on the basis

Pennsylvania simply mailed the record of the hearing to Massachusetts where a Massachusetts examiner made the decision, no one, neither the evidence taker nor the decisionmaker, assessed the credibility of the witnesses or resolved the conflict in their testimony.

The resolution of conflicts in testimony is one aspect of the fact-finding process in an administrative proceeding.[5] Pursuant to the Interstate Benefit Payment Plan, Massachusetts has delegated to the agent State the responsibility for "investigation and reporting of relevant facts," 430 Code Mass. Regs. § 4.05(b) (1981). This responsibility requires that the agent State resolve conflicts in testimony.[6]

The decision in Dowd's case turns very much on credibility. The dispute is about what happened at the Shenandoah unemployment office on August 4, 1981: what, exactly, Dowd asked for and what, exactly, he was told. Dowd claims he was told he would have to wait to file his appeal until his records arrived from Massachusetts. A representative of the Shenandoah office testified at the hearing that it is standard operating procedure to take an interstate claim-

---

of documentary evidence and a decision can be made on the record and transcript even though the decision maker did not actually hear the oral argument. *Au Yi Lau* v. *United States Immigration and Naturalization Serv.*, 555 F.2d 1036, 1042 (D.C. Cir. 1977).

[5] See, e.g., *Thomas* v. *Unemployment Compensation Bd. of Review*, 48 Pa. Commw. 630, 632 (1980) ("conflicts in testimony are properly resolved by the referee and the Board"); *Schlicker* v. *Blake & Sons*, 55 A.D. 2d 789, 790 (N.Y. 1976) ("the resolution of the conflict [in the evidence] and the credibility of witnesses is in the sole province of the board").

[6] See, e.g., *Jacobs* v. *District Unemployment Compensation Bd.*, 382 A.2d 282, 289 (D.C. 1978) ("because petitioner's credibility is so essential to the determination . . . it is critical that the person who actually examines the claimant on behalf of the Board either make proposed findings . . . or supply sufficient evidentiary detail, including consideration of the claimant's and other witnesses' demeanors, for the Board to make such findings"); *Hill* v. *District Unemployment Compensation Bd.*, 302 A.2d 226 (D.C. 1973) (decision of appeals examiner based on claim forms that claimant had failed to search diligently for work could not stand when there was conflicting testimony at the hearing and when the hearing referee in charge made no report or comment on the inconsistency in the evidence).

ant's appeal when requested, whether or not his records are there already. When a decision depends on choosing between conflicting versions of the material events, as in this case, the review examiner needs more than just the record and a tape recording or transcript of the hearing. The examiner for the agent State could not decide the ultimate issue of whether good cause existed for the late appeal but he should have resolved the conflicts in the testimony of the witnesses.

The judgment of the District Court is reversed and the case is to be remanded to the Division of Employment Security for further proceedings consistent with this opinion.

*So ordered.*