TOWN OF PETERSHAM *vs.* COMMISSIONER OF REVENUE.

Suffolk. October 4, 1983. — February 13, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation,* Commissioner of Revenue, Real estate tax: equalized valuations; Appellate Tax Board: jurisdiction. *Jurisdiction,* Appellate Tax Board.

Under G. L. c. 58, § 10, the Appellate Tax Board lacked jurisdiction to hear a town's appeal from a determination of equalized property valuations by the Commissioner of Revenue where the town had failed to make a written response to a request from the commissioner for information on local property valuations. [139-142]

APPEAL from a decision of the Appellate Tax Board.

*Stephen S. Ostrach,* Assistant Attorney General, for Commissioner of Revenue.

*John J. Driscoll* for the town of Petersham.

LYNCH, J. This is an appeal by the Commissioner of Revenue (Commissioner) from a decision of the Appellate Tax Board (board). On December 4, 1981, the Commissioner sent a letter to the town of Petersham requesting information on local property valuations, in accordance with her[1] statutory responsibility for determining equalized valuations of property in the Commonwealth once every two years. G. L. c. 58, § 9. The letter stipulated that the town had thirty days to respond to the request. Pursuant to the Commissioner's authority under G. L. c. 58, § 10,[2] the letter

---

[1] In January, 1983, Commissioner L. Joyce Hampers was succeeded by Commissioner Ira Jackson.

[2] General Laws c. 58, § 10, as appearing in St. 1979, c. 797, § 8, provides in relevant part: "If a city or town fails to submit such information in its possession or which it can reasonably be expected to obtain as the commissioner requests in writing for use in determining the equalized valuations required by section nine and such failure continues for thirty days

also stated that, if no response was submitted during this time period, the town would lose any right to appeal the Commissioner's ultimate determination of property valuations.

The request was received by the town the next day, but no written response was filed either during the thirty-day period or thereafter. On January 29, 1982, the Commissioner informed the town that its failure to respond to the December 4 letter had caused the forfeiture of its right to appeal the Commissioner's determination of equalized property valuations to the board.

The town does not appear to contest this description of the situation. However, the town maintains in an affidavit that "[d]uring 1981 and 1982" it was "in communication" with certain unidentified officials at the Department of Revenue (department). The town claims that the department was advised that the town's revaluation process would not be completed until March, 1982, and for that reason its failure to file a written response to the Commissioner's December 4 letter was excusable.[3]

Relying on this argument, the town appealed the Commissioner's valuation to the board, which took jurisdiction of the appeal. In doing so, the board rejected the Commissioner's argument that the town had lost its right of appeal because of its failure to supply any of the information she had requested. The board went on to hear the town's case on the merits, and it ultimately reduced the equalized valuation arrived at by the Commissioner. We hold that the

after such written request, such city or town shall not have a right to submit testimony to the commissioner as provided under section ten A and the decision of the commissioner with respect to such city or town shall be final."

[3] The specific written response requested by the department was the completion of a Form 4-S detailing property classes and assessed values in the town. The Commissioner appended a blank copy of this form to his brief, an action which the town opposed on the ground that this form was not properly part of the record on appeal. Since we decide this case on the basis of the town's failure to respond to the Commissioner's request as opposed to the substantive content of the response requested, we need not reach this issue.

board was without jurisdiction to hear the town's appeal, and we reverse the decision of the board.

We have noted on several occasions in the past the importance of the Commissioner's biennial revaluation of property in the Commonwealth. See, e.g., *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558, 561 (1974). This compilation of "equalized valuation" statistics is relied upon for the distribution of financial assistance to cities and towns, the apportionment of county and other taxes, and the establishment of the "full and fair cash value" of all property in the State, which in turn forms the basis of the limitations upon local property taxation created by Proposition 2½. *Id. Newton* v. *Commissioner of Revenue,* 384 Mass. 115, 116-117 (1981).

Collecting such information from 351 cities and towns is a large task. "[T]he functions of the [C]ommissioner and the [department] in these respects are to command and not merely to advise or educate." *Sudbury* v. *Commissioner of Corps. & Taxation, supra* at 569. A purely or partially voluntary process would fall prey to bias engendered by the financial rewards at stake (i.e., a lower valuation could mean eligibility for greater State aid). In addition to being mandatory, a Statewide valuation process must also be founded upon uniformity in treatment, even at the risk of occasionally failing to recognize an individual circumstance that may be meritorious. We have acknowledged in this context that it may sometimes be necessary to "conced[e] perfection in result, in favor of a process which is orderly, expeditious, and reliable." *Newton* v. *Commissioner of Revenue, supra* at 122.

Such is the case with the requirement that a town answer the Commissioner's requests for property valuations, even if the response will be that the information is not yet available. If a town could simply decide not to respond to the Commissioner's requests, this would potentially cripple the equalized valuation process, since the department would have no way of knowing the ground for the nonresponse. As a matter of policy, the Commissioner's position is justifiable.

As a matter of law, it is equally well supported. Although G. L. c. 58, § 10, does not specify the type of response required for information requests by the Commissioner, a requirement that towns respond in writing to such written requests is a reasonable construction of the statutory mandate. In turn, the Commissioner's interpretation of the statute is entitled to some weight. See *Lowell Gas Co. v. Commissioner of Corps. & Taxation*, 377 Mass. 255, 262 (1979); *Ace Heating Serv., Inc. v. State Tax Comm'n*, 371 Mass. 254, 256 (1976). More importantly, G. L. c. 58, § 10, on its face, does require the submission of "information in [the town's] possession or which it can reasonably be expected to obtain" within the thirty-day time period, a condition that the town's alleged "communications" with revenue officials clearly fail to meet.

The town raises several arguments in its efforts to avoid the explicit bar which G. L. c. 58, § 10, places on its rights of appeal. The first argument amounts to a jurisprudential non sequitur. It states in effect that regardless of whether the board had jurisdiction to hear the town's appeal, since it rendered a decision, that decision was final, and not reviewable, according to the directive of G. L. c. 58, § 10B.[4]

The problem with this contention is that G. L. c. 58, § 10, properly read, prevents one from reaching the question whether G. L. c. 58, § 10B, should apply. It is self-evident that the finality of the decision of the board is not material unless the board has jurisdiction to hear the matter. The board possesses only such jurisdiction as has been expressly conferred. G. L. c. 58A, § 6. See *Commissioner of Revenue v. Pat's Super Mkt., Inc.*, 387 Mass. 309, 311 (1982); *Stilson v. Assessors of Gloucester*, 385 Mass. 724, 732 (1982). The grant of jurisdiction embodied in G. L. c. 58, § 10B, is necessarily qualified by the requirements set forth in G. L. c. 58,

---

[4] On this point, G. L. c. 58, § 10B, as amended by St. 1982, c. 47, §§ 2, 3, states that "a city or town aggrieved by the equalized valuation established by the commissioner under sections nine and ten A may appeal the determination of the commissioner to the appellate tax board. . . . The decision of the board shall be final."

§ 10, and therefore the assertion of jurisdiction by the board was not justified.[5]

The town tries further to sidestep the finality language in G. L. c. 58, § 10, by focusing on a recent legislative amendment. St. 1979, c. 797, § 8 (eliminating italicized segment; compare note 2, *supra*).[6] The town argues that the elimination of the reference to G. L. c. 58, § 10B, in the revised statute indicates a legislative intent to give the board jurisdiction over appeals even where the conditions of G. L. c. 58, § 10, are not complied with.

This reasoning is faulty on several accounts. First, it treats the finality language in G. L. c. 58, § 10, as having no significance, contrary to the generally accepted rule of statutory construction "that every word of a legislative enactment is to be given force and effect." *Chatham Corp.* v. *State Tax Comm'n*, 362 Mass. 216, 219 (1972). Second, this analysis ignores the *addition* of the language requiring submission of "information in [the town's] possession *or which it can reasonably be expected to obtain"* in the revised G. L. c. 58, § 10 (emphasis added). Such an amendment implies a requirement that cities and towns attempt to respond substantively to the Commissioner's requests for valuation data; it in no way indicates that a failure to respond is excusable, or that in the event of such a failure subsequent review of the Commissioner's determination by the board is still possible.

---

[5] It should also be noted that G. L. c. 58, § 10B, does not even reference § 10; it only applies to "equalized valuation[s] established by the commissioner under sections nine and ten A." This is still another reason why the statement of finality in § 10B is not pertinent to the question whether failure to comply with § 10 bars an appeal.

[6] The earlier version of G. L. c. 58, § 10, as amended through St. 1978, c. 580, § 7, provided in relevant part: "If a city or town fails to submit such information in its possession as the commissioner requests in writing for use in determining the equalized valuations required by section nine and such failure continues for thirty days after such written request, such city or town shall not have a right *of appeal to the appellate tax board as provided under section ten B* and the decision of the commissioner with respect to such city or town shall be final."

Finally, the amendment to the statute makes good sense as a logical matter. Under the earlier version of G. L. c. 58, § 10, a nonresponsive town was still allowed to submit evidence at a G. L. c. 58, § 10A public hearing,[7] although an appeal to the board was barred. This right of a nonresponsive town to submit information at a public hearing was eliminated by the 1979 amendment. While the earlier configuration of the statute (right to a hearing, but no appeal) made some sense, its converse (no right to a hearing, but a right of appeal), which the town urges as the correct interpretation of the current statute, makes none at all. No explanation has been advanced to us as to why the Legislature would have decided to give a town a right of appeal from a valuation determination while at the same time denying its former right to submit information at a hearing at an earlier stage of the process. In recognition of the public interest in a Statewide valuation process that is conducted in an orderly and efficient manner, the Legislature's amendment to G. L. c. 58, § 10, placing a greater responsibility on towns to cooperate with the Commissioner's requests for information is understandable and should not be read in a manner designed to defeat its purpose.

The town's final argument can be dealt with summarily. The town alleges that since no report or findings of fact were entered by the board, the record on appeal is insufficient for this court to render a decision. In support of this contention, the town relies on such cases as *Assessors of Norwood* v. *Barton,* 384 Mass. 699, 700 (1981), and *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368

---

[7] General Laws c. 58, § 10A, as appearing in St. 1982, c. 47, § 1, provides that: "On or before June tenth, in each year in which an equalization is to be established, the commissioner shall hold a public hearing on the proposed equalized valuations. He shall send written notice thereof, together with a copy of the proposed equalized valuations, to the assessors of each city and town on or before June first of such year. The commissioner may, on the basis of any new information furnished to him at such hearing or otherwise, change the proposed equalized valuation of any city or town. Notice of any change shall be sent to the assessors of such city or town on or before July twentieth next following."

Mass. 745, 748-751 (1975). These cases are clearly distinguishable, since both turned on a failure of the appellant to request findings and a report.

It is not necessary that we have findings and a report in this case. Even if the record before us is viewed in the light most favorable to the town, it still cannot prevail. The affidavits submitted by the town to the board can be read to support the town's contention that it was unable to supply the information requested. They do not support the contention that the town made this inability known to the Commissioner in any kind of formal response. We read the statute to require a formal response to the Commissioner's request. Acceptance of the town's claim that oral "communications" were in fact made to the Department of Revenue during 1981 and 1982 cannot excuse the town's failure to respond in writing, specifically and within the required time, to the Commissioner's information request.

The decision of the Appellate Tax Board modifying the Commissioner of Revenue's valuation determination for the town of Petersham is reversed.

*So ordered.*