## BAYER CORPORATION[1] *vs.* COMMISSIONER OF REVENUE.

Suffolk. December 4, 2001. - March 13, 2002.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Taxation,* Corporate excise, Appellate Tax Board: proceedings.

In a hearing before the Appellate Tax Board (board), where resolution of essential conflicting factual claims depended upon credibility determinations, the board's presiding officer was required to participate materially in the board's deliberations; therefore, this court vacated a decision of the board based solely on a record of the hearing, where the presiding officer, who was the only board member who sat through the hearing, retired more than ten months before the decision was issued. [306-309]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kathleen King Parker* (*John R. Baraniak, Jr.,* with her) for the taxpayer.

*Daniel J. Hammond,* Assistant Attorney General, for the Commissioner of Revenue.

COWIN, J. This is an appeal from a decision of the Appellate Tax Board (board) affirming the denial by the Commissioner of Revenue (commissioner) of applications by Bayer Corporation, as successor to Agfa Corporation and its subsidiary Agfa Financial Services, Inc. (collectively, taxpayer, except where it is necessary to identify a specific corporation), for the abatement of corporate excise taxes assessed for the tax years 1989 through 1991. The taxpayer claims that the board erred by rendering a decision without the participation of the board member who heard the evidence and by imposing the wrong

---

[1]As the result of a series of acquisitions, mergers, and name changes, Bayer Corporation is the successor in interest to the corporations whose transactions form the basis of this appeal, namely, Agfa Corporation (Agfa) and its wholly owned subsidiary, Agfa Financial Services, Inc. (Agfa Financial).

burden of proof. The taxpayer further asserts that the board's findings are not supported by substantial evidence, based on error of law, and in violation of the commerce clause of the United States Constitution. We transferred the appeal to this court on our own motion and now reach only the merits of the procedural claim regarding the board member's failure to participate in the board's decision. We conclude that, because credibility of witnesses was at issue, the board's decision must be based on more than just a record of the hearing. Accordingly, we vacate the board's decision and remand the matter for a new hearing. Because of our ruling that a new hearing is required, we do not reach the remaining issues raised by the taxpayer.

A brief summary of the corporate excise tax statutory framework is helpful in understanding the underlying dispute. We draw on the description of the relevant statutes contained in the findings of fact and report of the board. A domestic corporation, such as Agfa Financial, that is doing business in Massachusetts is subject to a corporate excise tax pursuant to G. L. c. 63, § 32. If a corporation's income is derived solely from business activities in Massachusetts, all of its income is taxable in Massachusetts. G. L. c. 63, § 38 (*b*). A corporation with income from business activities conducted both within and without Massachusetts may apportion that income to Massachusetts and the other States, in the manner set forth in G. L. c. 63, § 38 (*c*), thereby reducing the taxes that must be paid to Massachusetts. Income is apportioned in the following manner: taxable net income is multiplied by a fraction, determined pursuant to a formula made up of three factors, a "payroll factor," a "property factor," and a "sales factor." The "payroll factor" compares the employees the corporation has inside and outside Massachusetts. G. L. c. 63, § 38 (*e*). The "property factor" and "sales factor" likewise compare the corporation's property and sales inside and outside of Massachusetts. G. L. c. 63, § 38 (*d*) and (*f*).

It may happen (as in the case of Agfa Financial for the periods at issue) that a corporation files its corporate excise tax returns with the "property" and "payroll" factors reported as zero. In such a case, the amount of the corporation's income apportioned to Massachusetts is determined solely on the "sales factor."

With respect to the "sales factor" under § 38 (*f*), the numerator is the taxpayer's total Massachusetts sales, and the denominator is the total sales from all sources during the taxable year. The term "sales," as used in § 38 (*f*), means "all gross receipts of the corporation except interest, dividends, and gross receipts from the maturity, redemption, sale, exchange or other disposition of securities." Thus, interest income is explicitly excluded from the apportionment factor, while rental income is included. Receipts that are characterized as rental income to a corporation (such as Agfa Financial) can be included in the sales factor (all rental income in the denominator, and to the extent that the rental income is earned in Massachusetts, in the numerator of the sales factor), and accordingly, the corporation can reduce its Massachusetts excise tax.

The issue before the board in the instant case was whether Agfa Financial was entitled to an abatement because the income it derived from equipment leasing transactions constituted rental income from assets it owned and leased, and not interest income from a financing arrangement. The board found that Agfa Financial did not own the leased equipment and thus could not have received rental income by leasing it. Rather, the board concluded, Agfa Financial was in the business of lease financing, and its financing arrangements generated solely interest income which, under G. L. c. 63, § 38 (*f*), could not be used to reduce the amount of tax that must be paid in Massachusetts. The board further concluded that Agfa Financial had failed to demonstrate that it had a nexus for tax purposes with any other State. Accordingly, the board determined that Agfa Financial was not entitled to apportion its income under G. L. c. 63, § 38 (*b*), was not entitled to an abatement, and was required to pay corporate excise tax on one hundred per cent of its income.

*Facts.* We summarize the facts from the findings of fact and report of the board. For tax years 1989, 1990, and 1991 (tax years at issue), the taxpayer timely filed combined Massachusetts corporate excise tax returns and paid the tax shown as due. In its original tax returns, Agfa Financial characterized its income from equipment lease transactions as interest, but then included the interest in the sales factor of its apportionment formula. Agfa Financial apportioned its interest income to various States, including Massachusetts.

When the commissioner audited the tax returns at issue, he agreed with Agfa's characterization of the income as interest, but he concluded that, as interest, the income should not have been included in the sales factor of the apportionment factor. G. L. c. 63, § 38 (f). As a result, he proposed to change Agfa's apportionment to one hundred per cent, with the result that the total proposed additional tax assessment due was $2,193,559. The commissioner then issued two notices of intention to assess, based on the increase of the Massachusetts apportionment formula to one hundred per cent.

The commissioner's appeal and review bureau subsequently held a hearing at the taxpayer's request, at which the taxpayer presented the hearing officer with amended combined corporate excise tax returns for the tax years at issue. In the amended tax returns, inter alia, the taxpayer recharacterized Agfa Financial's income as apportionable rental income. The hearing officer refused to accept the amended tax returns and upheld the assessments relating to Agfa Financial. The taxpayer paid the additional assessments in full and filed applications for abatement of the corporate excise tax with the commissioner, which were deemed denied. See G. L. c. 58A, § 6.

The taxpayer appealed to the board and a two-day hearing was held at which one member presided. She was the only board member who sat through the hearings.[2] She heard the testimony of four witnesses and received over forty exhibits. However, her term on the board expired more than ten months before the board issued its decision and more than sixteen months before it issued its findings of fact and report. There is no evidence that she issued a tentative decision or conveyed any proposed findings to the board prior to the end of her term. Rather, the board based its decision solely on a reading of the parties' stipulation and the testimony and exhibits entered in evidence at the hearing.[3] Thus, the only member who presided at the hearing, the only member to have heard the evidence, did not participate in the board's decision.

[2]Pursuant to the board's governing statute, hearings may be held before less than a majority of the board. See G. L. c. 58A, § 8.

[3]The record does not indicate whether the board reviewed a transcript or a tape recording of the hearing. Such a distinction is immaterial to our decision.

The board issued its decision in favor of the commissioner, and said decision was signed by four board members.[4] Subsequently, at the request of the parties, the board issued a report setting forth the board's findings of fact.[5] The board concluded that the taxpayer failed to meet its burden of proving that its initial characterization of Agfa Financial as a financing business was incorrect and that, instead, Agfa Financial was the lessor-owner of the leased equipment. Accordingly, the board found that Agfa Financial received interest income, that all of Agfa Financial's business activities were conducted in Massachusetts without a nexus to any other State, and that Agfa Financial was not entitled to apportion its income.

*Discussion.* Although no applicable statute or regulation requires that the officer hearing the evidence in an administrative proceeding (presiding officer) must participate in the agency's decision, cf. G. L. c. 30A,[6] we have held that "[w]hen a decision depends on choosing between conflicting versions of the material events, . . . the review examiner needs more than just the record and a tape recording or transcript of the hearing." *Salem* v. *Massachusetts Comm'n Against Discrimination,* 404 Mass. 170, 174 (1989), quoting *Dowd* v. *Director of the Div. of Employment Sec.,* 390 Mass. 767, 771 (1984).

The resolution of conflicts in testimony is one aspect of the fact-finding process of an administrative proceeding. *Dowd* v.

---

[4]The board's governing statute states that the board "consist[s] of five members." G. L. c. 58A, § 1. The record does not provide a reason for the fifth member's absence from the decision. Regardless of whether there was a vacancy in the board or an absence for another reason, the board's powers in issuing a decision were not impaired because less than five of its members signed the decision. See *id.* ("A vacancy in the board shall not impair its powers nor affect its duties"); G. L. c. 58A, § 1A ("The majority of the members of the board shall constitute a quorum for the transaction of its business").

[5]The board, while required to render a decision after the close of the record, need not issue findings of fact and report thereon, unless the parties so request. See G. L. c. 58A, § 13; 831 Code Mass. Regs. § 1.32 (1996).

[6]The procedures of the board are not governed by the Administrative Procedure Act, see G. L. c. 30A, § 1 (2) (board exempted from G. L. c. 30A by St. 1968, c. 120, § 1), but by 831 Code Mass. Regs. §§ 1.00 (1996). See 831 Code Mass. Regs. § 1.37 (1) ("Except as herein otherwise provided, the practice and procedure before the [b]oard shall conform to that heretofore prevailing in equity causes in the courts of the Commonwealth prior to the adoption of the Massachusetts Rules of Civil Procedure . . .").

*Director of the Div. of Employment Sec., supra* at 770. Resolution of conflicts in evidence and the credibility of the witnesses is in the province of the board. *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 43 n.6 (1997), cert. denied, 523 U.S. 1059 (1998), quoting *Cummington Sch. of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 605 (1977).

The decision in this case depended on issues of credibility. Here, three witnesses testified for the taxpayer and one for the commissioner. Their testimony conflicted on issues material to determining whether the taxpayer was wrongfully assessed corporate excise taxes. As the board itself recognized, Agfa Financial could not be required to apportion to Massachusetts, and pay corporate excise tax on, one hundred per cent of its income unless Agfa Financial did not own the leased equipment, its income was therefore generated solely from interest, and it had no business activities creating a nexus for tax purposes with any other State. The board found that Agfa Financial did possess such characteristics, implicitly discounting the testimony of the taxpayer's witnesses as not credible.

Although the board did not specifically name the witnesses in its findings of fact and report, it rejected the relevant positions of the taxpayer's witnesses and accepted those of the commissioner's witness. For instance, the current vice-president and general manager of Bayer, who testified about the nature of Agfa's and Agfa Financial's business inside and outside Massachusetts during the relevant tax periods, explained that Agfa sold and transferred title of the leased equipment to Agfa Financial and that Agfa Financial conducted business outside of Massachusetts. The current manager of State taxes at Bayer testified about the mistakes made in the taxpayer's original tax returns and the attempts to correct the mistakes by filing amended tax returns. Further, the taxpayer's expert witness testified that the sources relied on by the commissioner's witness to determine the proper treatment of the leases, such as accounting guides and the taxpayer's books and records, did not govern tax reporting and if relied on for tax purposes could result in an erroneous classification.

Clearly, the credibility of these witnesses and that of the commissioner's witness, who contradicted their testimony, was

central to the determination of this matter. The board could not evaluate the credibility of the witnesses without observing their demeanor when testifying.[7] See *Salem* v. *Massachusetts Comm'n Against Discrimination, supra* at 175. Contrast *Rabinovitz* v. *Commissioner of Revenue*, 396 Mass. 133, 136 (1985); *Stilson* v. *Assessors of Gloucester*, 385 Mass. 724, 731 (1982). The board's reliance on only the record of the hearing to reach its decision was, therefore, fundamentally flawed and must be vacated. *Salem* v. *Massachusetts Comm'n Against Discrimination, supra.* See *Fox* v. *Commissioner of Revenue*, 51 Mass. App. Ct. 336, 343 (2001), and cases cited.[8]

The board's decision is final as to findings of fact. G. L. c. 58A, § 13. See also *Commissioner of Corps. & Taxation* v. *J.C. McCrory Co.*, 280 Mass. 273, 278 (1932). This means that the board's "findings have the same force and effect as the verdict of a jury or the finding of a judge sitting without a jury or master in equity upon unreported evidence." *Id.* Accordingly, as indicated above, we have consistently ruled that assessment of the credibility of witnesses is a matter for the board. See *Kennametal, Inc.* v. *Commissioner of Revenue, supra* at 43 n.6, quoting *Cummington Sch. of the Arts, Inc.* v. *Assessors of Cummington, supra* at 605. We have developed this rule because of our respect for the fact-finder's role, recognizing that the finder of fact is far better equipped to make such determinations. See *Perkins* v. *School Comm. of Quincy*, 315 Mass. 47, 53 (1943).

However, deference to the board for assessments of credibility is based on the assumption that it has had the opportunity to view the witnesses firsthand and has made a determination with respect to their veracity. See *id.* See also *Adams* v. *Industrial*

---

[7]The commissioner argues that the taxpayer's witnesses gave "vague and inconsistent witness testimony" that conflicted with the documentary evidence. This characterization does not avoid the necessity of credibility determinations.

[8]The commissioner seeks support from this court's decisions in *Rabinovitz* v. *Commissioner of Revenue*, 396 Mass. 133, 136 (1985), and *Stilson* v. *Assessors of Gloucester*, 385 Mass. 724, 731 (1982). The situation in this case differs from those. In *Rabinovitz* and *Stilson*, the hearing officer participated in making the initial decisions. See note 4, *supra*. Subsequently, the function of producing findings of fact was permissibly performed by other agency members. These cases do not stand for the proposition that, when credibility issues are involved, the original decision may be made without any participation by the member who presided at the hearing.

*Comm'n of Ariz.*, 147 Ariz. 418, 421 (Ct. App. 1985). If this foundation of judicial review is removed, the reviewing court is left with no assistance from the factfinder, assistance which it requires in cases of conflicting evidence. Accordingly, if the factfinder and this court are both "reaching a decision upon the 'cold record,' the integrity of the legal process not only falters, it fails." *Fox* v. *Commissioner of Revenue, supra* at 343, quoting *Adams* v. *Industrial Comm'n of Ariz., supra* at 421. This was the scenario in the present case.

As the Appeals Court recently recognized, this holding does not imply that "the member of the board presiding at a hearing actually must author the board's decision or that each member of the board personally must observe the witnesses' conduct and demeanor." *Fox* v. *Commissioner of Revenue, supra* at 343. Rather, an individual or group other than the presiding officer may issue the decision and, if requested, the findings of fact and report if either of the following factors is met: (1) the presiding officer "participated in the board's deliberations in a meaningful manner," or (2) "credibility or evidentiary weight determinations are inessential" to the decision. *Id.* at 343-344, and cases cited. If, as in this case, "resolution of essential conflicting factual claims depends upon credibility determinations, the board's [presiding] officer must materially participate in the board's deliberations." *Id.* See *Salem* v. *Massachusetts Comm'n Against Discrimination, supra* at 175-176 (comparing *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 498 [1978] [only presiding officer can judge credibility of witness], with *Board of Appeals of Maynard* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 370 Mass. 64, 66 [1976] [upholding commission's decision where one commissioner attended all hearings, another attended some and read transcript, and third relied exclusively on transcript]).

The decision of the Appellate Tax Board is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*