COMMONWEALTH *vs.* PAUL LeBLANC.

Middlesex. November 7, 1989. - March 19, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Arrest. Motor Vehicle,* Operating under the influence, Citation for viola-
tion of motor vehicle law. *Police,* Unlawful arrest. *Evidence,* Illegally
obtained material. *Practice, Criminal,* Motion to suppress.

A police officer had no authority under G. L. c. 41, § 98A, to make a
warrantless arrest outside his jurisdiction where the offense for which
he pursued a motorist across the jurisdictional boundary was a nonar-
restable traffic violation. [72-73]
A police officer had no authority under G. L. c. 90C, § 2, to pursue and
stop a motorist over the boundary of the officer's jurisdiction in order to
deliver a citation for a nonarrestable traffic violation. [73-75]
In circumstances where a police officer had no authority to stop a motorist
or to arrest him, all evidence flowing from the stop and the arrest was
to be suppressed. [75]

COMPLAINT received and sworn to in the Natick Division
of the District Court Department on February 8, 1988.

On transfer to the jury session of the Framingham Divi-
sion, a pretrial motion to suppress evidence was heard by
*Robert V. Greco,* J.

The Commonwealth's application for an interlocutory ap-
peal was allowed by *Wilkins,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported
by him.

*Catherine E. Sullivan,* Assistant District Attorney, for the
Commonwealth.

*John H. LaChance* for the defendant.

LIACOS, C.J. This is an interlocutory appeal by the Com-
monwealth from a District Court judge's allowance of the
defendant's motion to suppress. The judge ordered suppres-
sion of evidence flowing from the defendant's extraterritorial

arrest in Framingham by a Natick police officer. The appeal was allowed by a single justice of this court. Mass. R. Crim. P. 15(a), 378 Mass. 882 (1979). We affirm in part and reverse in part.

The judge made the following findings of fact. At 10 P.M. on February 5, 1988, while in a marked Natick police department automobile, Officer William Geissler of the Natick police department observed the defendant's vehicle traveling at a high rate of speed and passing through a red light. When these observations were made, the defendant and the police officer were in Natick. The officer commenced following the defendant's vehicle; both vehicles then crossed into the bordering town of Framingham. The defendant pulled his vehicle to the curb within a reasonable period of time from the officer's command.

The officer approached the vehicle and asked the defendant for his license and registration. The defendant did not have a license with him. Officer Geissler detected a strong odor of alcohol coming from the defendant. The officer asked the defendant to perform two field sobriety tests which, in the officer's view, the defendant failed. The officer arrested the defendant and took him to the Natick police station where the defendant was subjected to a breathalyzer test, which registered a .15 blood alcohol content.[1]

A judge of the District Court ruled that, while the police officer had the authority to stop the defendant in Framingham, he exceeded his authority when he arrested him. The judge granted the defendant's motion to suppress all evidence resulting from the arrest, including the breathalyzer test, the observations during booking, and the sobriety tests conducted at the station. The judge did not

---

[1]The defendant was taken to the Natick station for booking even though Framingham police had arrived at the scene. In Natick, the complaints issued against the defendant were for operating a motor vehicle while under the influence of an intoxicating beverage, G. L. c. 90, § 24 (1) (*a*)(1988 ed.) (a criminal violation), and for failure to stop for a red light, G. L. c. 90C, § 2 (1988 ed.) (a civil infraction).

suppress the police officer's prearrest observations and did not dismiss the case.

1. *Legality of the arrest.* Generally, a police officer is powerless to make a warrantless arrest outside the boundaries of the governmental unit by which he was appointed. *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). The Legislature, through G. L. c. 41, § 98A (1988 ed.), permitted extraterritorial "fresh pursuit" arrests for any arrestable offense, whether it be a felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction. See *Grise, supra* at 249. Section 98A provides, in part: "A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant."[2]

The Commonwealth argues that, despite the fact that the officer was pursuing the defendant across town lines because of a nonarrestable traffic violation,[3] the statute nonetheless allowed the officer to arrest the defendant in Framingham. The Commonwealth suggests that the officer need not have suspected that the defendant was driving under the influence at the time he followed the defendant into Framingham. In our view, the statute cannot be read reasonably to mean that an officer need not know that an arrestable offense has been committed in his presence in order to pursue the suspect in another jurisdiction. See *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982) ("We will not adopt a literal construction of a statute if the consequences of such

---

[2]The statute also provides: "Said officer may return any person so arrested to the jurisdiction wherein said offence was committed. Nothing contained in this section shall be construed as limiting the powers of a police officer to make arrests and in so far as possible this section shall be deemed to be declaratory of the common law of the commonwealth." G. L. c. 41, § 98A.

[3]Passing through a red light, a civil traffic infraction, is not an arrestable offense. See G. L. c. 90C, § 2.

construction are absurd or unreasonable"). The officer must have some reason to believe that the suspect has committed an arrestable offense before he can pursue and arrest an individual pursuant to § 98A. This interpretation comports with the legislative history of G. L. c. 41, § 98A. See 1967 House Journal 567.[4] If the Legislature thinks it desirable to expand a police officer's authority to deal with a case like that before us, it is free to do so. See *Commonwealth* v. *Grise, supra* at 252. In addition, "[i]n the absence of legislative action, we note that police departments, where practical, may take the precaution of having their officers sworn in as special officers on the police forces of neighboring cities and towns in order to validate extra-territorial arrests." *Id.* at 252 n.6, citing G. L. c. 41, § 99 (1984 ed.), and *Commonwealth* v. *Harris,* 11 Mass. App. Ct. 165, 171 n.6 (1981).

2. *Legality of the stop.* The defendant claims that Officer Geissler acted without statutory authority when he stopped the defendant in Framingham.[5] We agree. A police officer's authority is limited to the territorial jurisdiction of his appointment, barring a statutory exception. See *Commonwealth* v. *Harris, supra* at 168-169. The Commonwealth argues that G. L. c. 90C, § 2, implicitly grants police officers the authority to make an extraterritorial stop. That statute governs the issuance of citations for automobile law viola-

---

[4]The out-of-State cases dealing with this particular issue indicate no clear trend. Compare *Wenatchee* v. *Durham,* 43 Wash. App. 547, 551 (1986) (extraterritorial arrest invalid because officer initially observed commission of traffic infractions, not felonies), with *Commonwealth* v. *Montgomery,* 513 Pa. 138, 144 (1986), cert. denied, 480 U.S. 935 (1987) (knowledge possessed by officer at time territorial boundary crossed not determinative).

[5]This issue was decided against the defendant by the motion judge, who refused to suppress any prearrest evidence which resulted from the stop. Ordinarily, a defendant may not pursue an interlocutory appeal of a denial of a motion to suppress. See *Commonwealth* v. *Mottola,* 10 Mass. App. Ct. 775, 781 (1980). However, the Commonwealth does not argue that the defendant is barred from making the argument, and as both parties have briefed and argued this issue, and as the issue appears to arise "under the umbrella of the government's appeal," we choose to address it. *Id.* at 782, quoting *United States* v. *Moody,* 485 F.2d. 531, 534 (3d Cir. 1973).

tions. Section 2 provides, in part: "A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure." The Commonwealth argues that the Legislature intended a police officer who observes an automobile violation in his jurisdiction to have the authority to pursue that automobile into the next city or town and to stop it there for the purpose of delivering a citation to the violator.

Nowhere in c. 90C is there any provision expanding the territorial authority of police officers. Contrary to the assertions of the Commonwealth, one "circumstance . . . justifying the failure" to give a citation is the lack of the authority of a police officer to stop an automobile in a neighboring jurisdiction. The statute's provision for delivery or mailing of the citation to a violator's home address, in the event of a driver's failure to stop, indicates that a police officer has no authority to stop a motorist outside his territorial jurisdiction.

Additionally, we observe the following. General Laws c. 90, § 21 (1988 ed.), which gives a police officer authority to make warrantless arrests of individuals under the influence of intoxicating substances, does not expand the territorial powers of that police officer. *Commonwealth* v. *Grise, supra.* Similarly, G. L. c. 90C, § 2, while allowing a police officer to stop a motorist in order to issue a citation, contains no provision giving the officer additional authority to make an extraterritorial stop. Last, the Legislature did not include in G. L. c. 41, § 98A, any authority for an extraterritorial stop following the fresh pursuit of a person who commits a civil traffic violation.

The Commonwealth, in arguing that the Legislature intended to give police officers authority to make extraterrito-

rial stops, cites a number of statutes which broaden police officers' territorial authority. See, e.g., G. L. c. 41, § 95 (1988 ed.) (extraterritorial authority to execute arrest warrants); G. L. c. 41, § 98 (1988 ed.) (extraterritorial authority to carry weapons); G. L. c. 41, § 98A (extraterritorial fresh pursuit for arrestable offenses). Rather than implying that the Legislature intended to give the police the authority to make extraterritorial stops, these statutes demonstrate that the Legislature knows how to expand the extraterritorial authority of the police when it thinks it fit to do so. The Legislature has chosen not to provide the police with extraterritorial authority to make stops for traffic violations. If it wishes to modify that judgment, it may do so.

3. *Disposition.* The police officer in this case acted without statutory or common law authority both when he stopped the defendant and when he arrested him. Our case law supports exclusion of evidence when such conduct prejudices the defendant. See *Commonwealth* v. *Grise*, 398 Mass. 247, 253 (1986); *Commonwealth* v. *Lyons*, 397 Mass. 644, 647-648 (1986). "We have on occasion found an exclusionary rule to be inherent in the purpose of a statute which the government has violated. See *Commonwealth* v. *Upton*, 394 Mass. 363, 367 n.4 (1985), where the cases are collected. We have found such a purpose inherent only in statutes closely associated with constitutional rights, rights grounded in fundamental fairness." *Id.* at 647. A police officer's conduct in excess of his authority fits into this category. The requirement that a police officer have lawful authority when he deprives individuals of their liberty is closely associated with the constitutional right to be free from unreasonable searches and seizures.

The District Court judge was correct in suppressing all evidence flowing from the arrest. Because of our conclusion that the extraterritorial stop was also improper, the fruits of the stop should also have been suppressed.

The order of the court is accordingly affirmed in part and reversed in part.

*So ordered*