COMMONWEALTH *vs.* KEVIN W. WHELAN.

Middlesex. April 2, 1990. - July 12, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Metropolitan District Commission. Arrest. Motor Vehicle*, Operating under the influence. *Boston. Somerville. Statute*, Construction. *Words*, "Metropolitan parks district."

A police officer employed by the Metropolitan District Commission (MDC) was acting within his jurisdiction when he stopped a motorist in Somerville and Boston and subsequently arrested him in Boston for operating a motor vehicle while under the influence of intoxicating beverages and for related violations, inasmuch as both Boston and Somerville are listed in G. L. c. 92, § 33, among the municipalities constituting the metropolitan parks district, and MDC police officers have authority "within the metropolitan parks district" under G. L. c. 92, § 61. [30-33]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on April 5, 1988.

A motion to dismiss was heard by *Henry A. Tempone*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Wendy Murphy*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. In this case, and in a related case which we decide today, we clarify the scope of the territorial jurisdiction of police officers employed by the Metropolitan District Commission (MDC). In this case, an MDC police officer twice stopped and subsequently arrested an individual who was allegedly driving an automobile while under the influence of intoxicating beverages and allegedly committing other related automobile (c. 90) violations. A judge of the District Court dismissed the complaints, holding that the police officer acted outside of his jurisdiction when he made the

stops and arrest. Because we hold that the police officer was acting within his jurisdiction, we reverse the decision below and remand for further proceedings.

We summarize the facts. At approximately 9:05 P.M. on April 3, 1988, Officer Michael R. Scalese of the MDC police department was on duty transporting a civilian in his police cruiser when he observed the defendant operating a motor vehicle on Broadway in Somerville.[1] Officer Scalese observed the defendant's vehicle make an abrupt lane change and almost strike Scalese's police cruiser. Officer Scalese activated his cruiser's emergency lights and stopped the defendant's vehicle on Broadway in Somerville. The defendant stated that he did not have a motor vehicle operator's license. Scalese told the defendant to follow in his car behind the police cruiser to the MDC Lower Basin station. En route, the defendant stopped following the police cruiser and proceeded onto Main Street in the Charlestown section of Boston.[2] Officer Scalese followed, and stopped the defendant on Main Street. He then observed that the defendant's speech was slightly slurred, and that the defendant smelled of alcoholic beverages. The officer directed the defendant to perform several field sobriety tests, which the defendant failed to perform to the officer's satisfaction. Officer Scalese arrested the defendant for operating an automobile while under the influence of an intoxicating beverage, in violation of G. L. c. 90, § 24 (1) (1988 ed.), operating a motor vehicle negligently so as to endanger (c. 90, § 24), and operating after license or right to operate was suspended (c. 90, § 23). A judge of the Somerville Division of the District Court Department suppressed the evidence flowing from the stops, and dismissed the complaints on the ground that MDC police officers do not have jurisdiction on either Broadway in Somerville or Main Street in Charlestown. We took this case on our own motion.

---

[1] Broadway is not an MDC roadway. See G. L. c. 92, § 35 (1988 ed.).
[2] Main Street is not an MDC roadway. See G. L. c. 92, § 35.

Generally, a police officer is powerless to make a warrantless arrest or stop outside his statutorily defined territorial jurisdiction. See *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 72, 73 (1990). General Laws c. 92, § 61 (1988 ed.), delineates the authority of MDC police officers. That section provides, in part: "The police appointed or employed by the commission . . . shall have *within the metropolitan parks district*, [and] within the cities and towns outside said district wherein property owned by or under management or control of the division of watershed management or the Massachusetts Water Resources Authority is situated . . . all the powers of police officers and constables of towns of this commonwealth" (emphasis supplied).

In order to determine what exactly is the "metropolitan parks district" in which these officers have authority, we look to G. L. c. 92, § 33 (1988 ed.). That section provides in part: "The commission may acquire, maintain and make available to the inhabitants of Arlington, Belmont, *Boston*, Braintree, Brookline, Cambridge, Canton, Chelsea, Dedham, Dover, Everett, Hingham, Hull, Lynn, Malden, Medford, Melrose, Milton, Nahant, Needham, Newton, Quincy, Revere, Saugus, *Somerville*, Stoneham, Swampscott, Wakefield, Waltham, Watertown, Wellesley, Weston, Westwood, Weymouth, Winchester and Winthrop, *which shall constitute the metropolitan parks district*, open spaces for exercise and recreation in this chapter called reservations; and, for the purposes set forth in this section, the jurisdiction and powers of the commission shall extend to, and be exercised in, said district" (emphasis supplied).

We agree with the Commonwealth's position that the key clause in this section, "which shall constitute the metropolitan parks district," refers to the cities and towns immediately preceding it, and not to "reservations" described in the clause following it. This interpretation is in accord with the general rule of statutory and grammatical construction that a modifying clause of this sort refers to the preceding antecedent. See *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 133 (1949). See also *Moulton* v. *Brookline Rent Con-*

*trol Bd.*, 385 Mass. 228, 230-231 (1982). See generally Strunk & White, The Elements of Style 28-31 (3d ed. 1979).

Other sections of c. 92 support our view that the district is composed of the towns and cities, not the reservations. Section 40 provides: "The commission may accept and maintain as a portion of the reservations under section thirty-three any lands or rights in land which may be given to the commonwealth, *provided such lands lie within the limits of the metropolitan parks district*, or without such limits but immediately contiguous thereto" (emphasis supplied). The section's proviso would make no sense if the "reservations" alone were considered to comprise the metropolitan parks district. The phrase "within the limits of the metropolitan parks district" suggests an area larger than the sum total of the reservations. Otherwise, it would be impossible for additional land "maintained as a portion of the reservations" to be "without such limits." A fair reading of this section, together with § 33, shows that the district is composed of the cities and towns listed in § 33.

Furthermore, there are references in c. 92 to "towns of the metropolitan parks district" (§§ 35 and 54), "cities and towns of the metropolitan parks district" (§ 48), and "the various cities and towns in said parks district" (§ 55). All of these phrases suggest that the metropolitan parks district is composed of the cities and towns listed in § 33.

The legislative history of the section supports our reading of the statute. Statute 1893, c. 407, established the predecessor of the MDC, the Metropolitan Park Commission. Section 3 provided: "The jurisdiction and powers of said board shall extend to and may be exercised in [twelve cities] and [twenty-five towns]; *which cities and towns shall constitute the Metropolitan Parks District*" (emphasis supplied). Under this statute, then, the predecessor to the current district was clearly composed of the listed cities and towns, and not merely of the parks within those towns.

Statute 1919, c. 350, § 123, abolished the metropolitan park commission and established the MDC. That statute provided that "[a]11 the rights, powers, duties and obliga-

tions of said boards are hereby transferred to and shall here-after be exercised and performed by the metropolitan district commission established by this act, which shall be the lawful successor of said commission and board." Section 127 pro-vided that "[t]he commission shall have and exercise over the public property transferred to its charge . . . *all the power and authority which the metropolitan park commission has over open spaces for exercise and recreation under [St. 1893, c. 407]*" (emphasis supplied).

We do not think that the Legislature, in enacting the cur-rent version of G. L. c. 92, § 33, intended to cut back drasti-cally the size of the metropolitan parks district. See 1 Report of the Joint Committee on Consolidating and Arranging the General Laws 729 (1920); G. L. c. 92, § 33 (1921 ed.). The metropolitan parks district, under the current statute, as under the original statute, is comprised of the cities listed in the relevant section.

Because Boston and Somerville are both listed in G. L. c. 92, § 33, they are within the metropolitan parks district. And because MDC police officers have authority "within the metropolitan parks district" under G. L. c. 92, § 61, Officer Scalese was acting within his territorial jurisdiction when he stopped the defendant in Somerville and Boston and when he arrested the defendant in Boston.[3]

Accordingly, we reverse the order of the District Court, and remand the case for further proceedings.

*So ordered.*

---

[3]General Laws c. 92, § 61, does not limit the scope of an MDC police officer's authority within the metropolitan parks district, except that such officers do not have "the power of serving and executing civil process." If the Legislature wishes to limit the MDC officer's power to relate more narrowly to the MDC reservations, it is free to do so.