COMMONWEALTH *vs.* ROBERT L. ZIRPOLO.

No. 93-P-1800.

Middlesex. August 3, 1994. - September 22, 1994.

Present: WARNER, C.J., SMITH, & IRELAND, JJ.

*Arrest. Motor Vehicle*, Operating under the influence, Operating to endanger, Leaving scene of accident.

A police officer who had received information on his radio that gave him reason to believe that the operator of a white Mustang automobile had committed an arrestable offense in the presence of another police officer properly pursued the vehicle to a stopping point just outside his jurisdiction and made a lawful extraterritorial warrantless arrest of the operator. [309-311]

COMPLAINTS received and sworn to in the Framingham Division of the District Court Department on March 26, 1993, and April 13, 1993, respectively.

On transfer to the jury session, the cases were tried before *Margaret A. Zaleski*, J., and a motion for a new trial was heard by her.

*Russell H. Mann, Jr.*, for the defendant.

*Daniel O. Tracy*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of a five-count complaint charging him with: (1) failing to stop for a police officer, (2) operating a motor vehicle negligently so as to endanger, (3) operating a motor vehicle with defective equipment, (4) leaving the scene of an accident after causing property damage, and (5) operating a motor vehicle while under the influence of intoxicating liquor. Later, another complaint issued alleging that, on the same date as the previous offenses, the defendant operated a motor vehicle while under the influence of intoxicating liquor, second offense.

The defendant exercised his right to a first-instance jury trial. The matter proceeded to trial on the various counts, with the exception of the second-offense portion of the operating under the influence count.

After the Commonwealth rested its case, the defendant filed motions to dismiss the counts charging him with operating a motor vehicle negligently and operating under the influence of intoxicating liquor on the ground that the defendant's arrest was an illegal extraterritorial arrest. He cited *Commonwealth* v. *Grise*, 398 Mass. 247, 249-253 (1986), in support of his argument. The judge denied both motions. The jury convicted the defendant of the counts charging him with operating a motor vehicle while under the influence of intoxicating liquor, operating negligently, and leaving the scene after causing property damage. He was found not guilty of failing to stop for a police officer.[1] The trial judge subsequently found the defendant guilty of the second offense portion of operating under the influence complaint. The defendant later filed a motion for a new trial based on the same issues he now raises on appeal. That motion was also denied.

On appeal, the defendant argues that the judge committed error in denying his motions to dismiss two of the five counts, his motions for required findings of not guilty, and his motion for a new trial. He claims that his extraterritorial arrest was illegal because no offense had been committed in the presence of the arresting officer and that officer did not have sufficient reason to believe that an offense had been committed.

We summarize the evidence presented by the Commonwealth. The doorman at a nightclub in Framingham refused to allow the defendant and his three companions to enter the nightclub because in his opinion they, including the defendant, had already had too much to drink to be allowed inside. When the doorman saw the defendant leave and get into the driver's seat of a white Mustang automobile, he went to a Framingham police officer, one Monson, stationed at the

---

[1] He was also found civilly responsible on the charge of operating a motor vehicle with defective equipment. This finding was placed on file.

nightclub and told him that the defendant was intoxicated and should not be driving a motor vehicle.

Officer Monson went out into the parking lot and saw the defendant operating the Mustang. He ordered the defendant to stop as the defendant was backing up. The defendant did not stop. The officer again ordered the defendant to stop. The defendant proceeded to back up into a parked car and break the vehicle's tail light. The officer yelled at him, "You hit a car," and again ordered him to stop. The defendant did not stop, turned off the vehicle's lights, and pulled out onto Route 9 at a high rate of speed.

Officer Monson, by radio, contacted the Framingham police station and reported that there had been a "hit and run" and a "failure to stop" for a police officer. Meanwhile, another Framingham police officer, one Pomales, was operating a marked police cruiser near the scene. He overheard the radio transmission about an accident and of a "possible drunk driver leaving the [club] lot" in a white Mustang. He saw the vehicle on Route 9 in Framingham. The officer did not notice any violations but, relying on the radio transmission, he activated his overhead lights in Framingham in order to stop the vehicle. The Mustang stopped just over the town line in Natick.

After the stop, the officer observed the defendant, who was driving the vehicle. He noticed indications of intoxication and conducted several field sobriety tests on the defendant. Based on observations of the defendant and his performance of the field sobriety tests, the officer formed the opinion that the defendant was operating a motor vehicle while under the influence of liquor.

The defendant's reliance on *Commonwealth* v. *Grise, supra,* is misplaced. In *Grise,* the police officer was outside his territorial jurisdiction and not in "fresh and continued pursuit" within the meaning of G. L. c. 41, § 98A (inserted by St. 1967, c. 263) at the time the officer arrested the defendant for operating a motor vehicle while under the influence of liquor. Here, the arrest of the defendant in Natick by a Framingham police officer was the result of a "fresh and

continued pursuit" by that officer of the defendant. For our analysis of the issues raised by the defendant, we examine those cases that involve fresh and continued pursuit across city or town lines.

In *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 71 (1990), the officer pursued the defendant across town lines because he observed the defendant commit a nonarrestable traffic violation, going through a red light. After stopping the defendant, the officer noticed a strong odor of alcohol. When the defendant failed two field sobriety tests, the officer arrested him for operating a motor vehicle while under the influence of liquor. The court noted that "[t]he Legislature, through G. L. c. 41, § 98A . . ., permitted extraterritorial 'fresh pursuit' arrests for any arrestable offense, whether it be a felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction." *Id.* at 72. The court ruled that "[t]he officer must have some reason to believe that the suspect has committed an arrestable offense before he can pursue and arrest an individual pursuant to § 98A." *Id.* at 73. Because the offense for which the officer pursued the motorist in *LeBlanc* was a nonarrestable offense, the Court ruled that the officer did not have any authority to make a warrantless arrest outside his jurisdiction. *Id.* at 72-73. In *Commonwealth* v. *O'Hara*, 30 Mass. App. Ct. 608, 609-610 (1991), we held that where a police officer had reason to believe that the defendant was operating a motor vehicle while under the influence of intoxicating liquor or operating negligently so as to endanger, both arrestable offenses, the officer was entitled to follow the vehicle across the boundary of his territorial jurisdiction in "fresh pursuit" and there to arrest the defendant.

Here, in the presence of a police officer (Monson) the defendant had committed at least one arrestable offense: failing to stop for a police officer (G. L. c. 90, §§ 21 & 25). The officer signalled at least that violation by radio to the police station. A fellow police officer overheard the communication and on that basis pursued the defendant outside his territorial jurisdiction. The arresting officer, as a result of the radio

communication that he heard in Framingham, had "reason to believe that the suspect ha[d] committed an arrestable offense," *Commonwealth* v. *LeBlanc*, 407 Mass. at 73, before he pursued and arrested the defendant in Natick.

The fact that the arrestable offense was not committed in the arresting officer's immediate presence is immaterial considering that the offense was committed in a brother officer's presence. Both Framingham police officers were acting in a joint effort to apprehend the defendant for an arrestable offense on the night in question. Under the collective knowledge doctrine as it relates to probable cause to arrest (an issue not before us), "it is unnecessary for the detaining officer to know all the information pertaining to the incident . . . . '[T]he knowledge of one [police officer] . . . [is] the knowledge of all.'" *Commonwealth* v. *Lanoue*, 356 Mass. 337, 340 (1969), quoting from *Commonwealth* v. *McDermott*, 347 Mass. 246, 249 (1964). See also *Commonwealth* v. *Gullick*, 386 Mass. 278, 283-284 (1982). We think that the doctrine applies in this matter and that the warrantless arrest of the defendant outside the territorial jurisdiction was proper.

> *Judgments affirmed.*
> *Order denying motion for new*
> *trial affirmed.*