LIGHTHOUSE MASONRY, INC., & another[1] *vs.* DIVISION OF
ADMINISTRATIVE LAW APPEALS & another.[2]

Suffolk. September 9, 2013. - December 31, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Labor,* Public works, Wages. *Public Works,* Wage determination. *Attorney General. Division of Administrative Law Appeals. Administrative Law,* Decision.

Discussion of the statutory framework of the prevailing wage law, G. L. c. 149, §§ 26-27H. [697-698]

There was no merit to an employer's argument that it should not be cited for a violation of the prevailing wage law where its failure to pay an employee the correct wage rate was due to a clerical error. [698-699]

This court concluded that the language of G. L. c. 149, § 27C (*b*) (4), provides the chief administrative magistrate of the Division of Administrative Law Appeals with the authority to implement an internal review procedure for decisions of hearing officers in an appeal under that section, before the final decision is issued; however, such an internal review should not be used to reject or change the findings on the ground that the chief administrative magistrate disagrees with them or would not have made them. [699-703]

This court concluded that, where a hearing officer of the Division of Administrative Law Appeals (DALA) resigns after drafting a decision on an appeal under G. L. c. 149, § 27C (*b*) (4), but before the issuance of a final decision, another DALA hearing officer, including the chief administrative magistrate, permissibly may take over and decide the appeal on the same administrative record. [703-705]

This court declined to address an argument that was not raised below, that was squarely presented in a separate but related appeal involving the same parties, and that lacked a fully developed factual record. [705-706]

CIVIL ACTION commenced in the Superior Court Department on August 26, 2008.

The case was heard by *Mitchell H. Kaplan,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

---

[1]Peter Alves.

[2]Attorney General.

*Harvey B. Heafitz* (*Scott K. Semple* with him) for the plaintiffs.

*Richard C. Heidlage*, Special Assistant Attorney General, for Division of Administrative Law Appeals.

*Karla E. Zarbo*, Assistant Attorney General (*Bruce Trager*, Assistant Attorney General, with her) for the Attorney General.

The following submitted briefs for amici curiae:

*Christopher C. Whitney & Scott K. Pomeroy* for Associated Builders & Contractors, Massachusetts Chapter.

*Donald J. Siegel & James A.W. Shaw* for Massachusetts Building Trades Council.

*Patricia A. DeAngelis*, Special Assistant Attorney General, for Department of Labor Standards.

BOTSFORD, J. This case primarily concerns the process governing appeals from civil citations issued by the Attorney General for alleged violations of the Commonwealth's prevailing wage law, G. L. c. 149, §§ 26-27H. The plaintiffs, Lighthouse Masonry, Inc., and its president, Peter Alves (collectively, Lighthouse), appeal from a Superior Court judgment that affirmed a prevailing wage law decision of a Division of Administrative Law Appeals (DALA) hearing officer under G. L. c. 149, § 27C (*b*) (4) (§ 27C [*b*] [4]). We consider here two interrelated questions about the DALA administrative hearing process directly raised in Lighthouse's appeal: whether the chief administrative magistrate of DALA has authority to review and approve a proposed decision of a DALA hearing officer in a § 27C (*b*) (4) appeal before the final decision is issued; and if so, whether, when a hearing officer of DALA resigns after drafting a decision on an appeal under § 27C (*b*) (4) but before the issuance of a final decision, another DALA hearing officer may take over responsibility for deciding the appeal. We also consider Lighthouse's challenge on substantive grounds to the affirmance of one of the civil citations issued against it by the Attorney General. We leave for resolution in a different case issues concerning whether and, if so, when and to what extent advisory opinions of the Department of Labor Standards (DLS)[3] on the appropriate classification of jobs and

---

[3] In 2011, pursuant to a reorganization of the Executive Office of Labor and Workforce Development, the programs and responsibilities of the division of occupational safety (DOS) and the division of apprentice training were com-

types of work are subject to review by a DALA hearing officer in the context of a § 27C (*b*) (4) appeal.[4]

1. *Facts and procedural history.*[5] On December 2, 2004, DLS issued a schedule of prevailing wage rates for a public works construction project at King Philip Regional High School in Wrentham (King Philip project). The schedule listed wage rates for the specific job classifications of, among others, "brick/ stone/artificial masonry (inc[luding] masonry waterproofing)" and "laborer: mason tender," but did not describe the job duties associated with the classifications listed.

Lighthouse was hired as the masonry subcontractor for the King Philip project, and performed its work during 2005 and 2006. On July 12, 2006, the Attorney General issued four citations to Lighthouse for failing to pay the prevailing wage to certain employees on the project in violation of G. L. c. 149, § 27. Three of the citations charged that Lighthouse paid the identified employees as laborers for certain types of work rather than as masons. The fourth citation charged that Lighthouse paid an employee below the appropriate wage rate that was known to apply to the type of work he was performing. With respect to this fourth citation, Lighthouse had noted the error and had corrected it before the citation issued. Each citation imposed a $500 fine on Lighthouse.

After Lighthouse appealed the citations to DALA but before the appeal was heard, an assistant attorney general assigned to the case wrote to DLS and requested an opinion as to the appropriate job classifications for the types of work that were the subject of the first three citations. The Commissioner of DLS (commissioner) responded in a letter dated March 23, 2007, opining that the work in question was properly classified as the

bined and consolidated under the new Department of Labor Standards (DLS). See G. L. c. 23, § 1, as amended through St. 2011, c. 3, § 17. For convenience, we use "DLS" in the text when referring to DOS prior to the 2011 reorganization.

[4]We acknowledge the amicus briefs submitted by Associated Builders and Contractors, Massachusetts Chapter; the Massachusetts Building Trades Council; and DLS.

[5]The facts set out in this section are taken from the summary judgment record and, in particular, the parties' joint statement of material facts. These facts are not in dispute.

work of a "cement mason/plasterer" or as "brick/stone/artificial masonry" — both classifications considered to be mason work — and not the work of a laborer.[6]

Kimberly Fletcher, a DALA administrative magistrate, was assigned as the hearing officer to hear Lighthouse's appeal. At the completion of the adjudicatory hearing held on August 3, 2007, Fletcher drafted a decision that was submitted for internal review in accordance with a process established by the then chief administrative magistrate of DALA, Shelly Taylor. Under this review procedure, every decision by an administrative magistrate was read by two other administrative magistrates and then forwarded to the chief administrative magistrate. In this case, Taylor reviewed Fletcher's draft in early 2008. In the subsequent months, Taylor and Fletcher appear to have engaged in several rounds of review and revision of Fletcher's draft.

Fletcher resigned from DALA effective June 4, 2008; at the time of her resignation, DALA had not yet issued a decision on Lighthouse's appeal. On June 12, Fletcher wrote to counsel for Lighthouse and the Attorney General, stating,

> "I resigned my position with [DALA] effective June 4, 2008. Many months ago, I completed my decision in the [Lighthouse] case. The decision has not yet been issued by DALA. I am writing this letter to let you know that I am not the cause of the delay."

In response to Fletcher's letter, Lighthouse requested that Taylor release Fletcher's decision. Taylor did not do so.

On July 10, 2008, Taylor held a status conference with the parties to inform them that a new hearing officer would be assigned to the matter. Thereafter, Taylor appointed herself to perform this role.[7] On July 29, the DALA decision on Lighthouse's appeal was issued, signed by Taylor. As had been true of Fletcher's draft decision, the decision signed by Taylor affirmed the fourth citation and vacated the first three. Fletcher's

---

[6]On May 8, 2008, the then Commissioner of DLS (commissioner) rescinded the previous commissioner's March 23, 2007, letter and reclassified all of the tasks at issue as "brick/stone/artificial masonry."

[7]Before assigning the appeal to herself, Taylor attempted unsuccessfully to assign it to two other administrative magistrates.

and Taylor's respective rationales for vacation, however, differed.[8]

Both Lighthouse and the Attorney General appealed the DALA decision in separate complaints filed in the Superior Court. For reasons not clear on the record, however, the two appeals were not consolidated for hearing and decision.[9] Lighthouse's complaint named the Attorney General and DALA as defendants and combined Lighthouse's appeal under G. L. c. 30A, § 14, from the affirmance of the fourth citation with requests for an injunction ordering DALA to produce Fletcher's decision; a declaration that Fletcher's decision was the final, binding DALA decision in this matter; and the vacation of Taylor's decision on the ground that Fletcher's decision was final and binding, and DALA had no authority to rewrite that decision. The Attorney General and DALA, as defendants, filed a single motion for summary judgment, and Lighthouse filed a motion for partial summary judgment. After hearing, in a written memorandum of decision, a Superior Court judge (motion judge) granted the defendants' motion and denied Lighthouse's motion.[10]

---

[8]Fletcher's decision made findings concerning the types of masonry-related tasks or work performed by a bricklayer or mason, on the one hand, and the type of work performed by a laborer on other, and concluded that the three employees who were the subjects of the first three citations were each performing laborer's work. Therefore, she concluded, the three had been paid at the correct rate, and the three citations issued against Lighthouse Masonry, Inc., and Peter Alves (collectively, Lighthouse) in relation to them were erroneously issued and must be vacated.

Taylor, citing a Superior Court judge's 2008 decision in a separate case (referred to as "Premier Caulking"), concluded that job classifications are exclusively within the authority of the commissioner; that the commissioner had determined that the work performed by the three Lighthouse employees who were the focus of the three citations was classified properly as mason's rather than laborer's work; and that therefore the employees should have been paid at the higher mason rate. Taylor further concluded, however, that because Lighthouse did not have notice of these proper classifications as determined by the commissioner before the citations issued, the three citations were "arbitrarily and erroneously issued, and so must be vacated."

[9]The Attorney General's appeal, discussed *infra*, remains pending in the Superior Court.

[10]Because the drafts of Fletcher's decision were produced during discovery in this case, by the time the cross motions for summary judgment were heard, the Superior Court judge (motion judge) concluded that Lighthouse's request for an injunction ordering DALA to produce Fletcher's decision was moot. None of the parties has challenged this ruling on appeal.

Judgment entered affirming the DALA decision and dismissing all counts of Lighthouse's complaint. Lighthouse filed a timely appeal, and we allowed its application for direct appellate review.

2. *Statutory framework.* The prevailing wage law requires that contractors and subcontractors on every public works construction project pay the "mechanics and apprentices, teamsters, chauffeurs and laborers" working on the project at the prevailing wage rate assigned to the various job classifications performing the work. G. L. c. 149, § 26. The commissioner of DLS is tasked with preparing a list of the specific jobs "usually performed on various types of public works" that employ such mechanics, apprentices, teamsters, chauffeurs, and laborers, and with "classify[ing]" those jobs. G. L. c. 149, § 27. The commissioner may "revise such classification[s] from time to time, as he may deem advisable." *Id.* The commissioner also must determine the appropriate prevailing wage rates for the jobs within a given public works construction project, furnish a schedule of these wage rates to the appropriate public official or public body responsible for the project, and update the wage rates annually. *Id.* The applicable wage rate schedule must be attached to advertisements for bids on every public works project. *Id.* Should a party wish to appeal either a job classification determination or a prevailing wage rate determination, that party may do so pursuant to G. L. c. 149, § 27A, "[w]ithin five days from the date of the first advertisement or call for bids."[11] Under § 27A, the commissioner or a designee is required to hold a public hearing on the appeal "immediately," and render a

---

[11]General Laws c. 149, § 27A, provides:

"Within five days from the date of the first advertisement or call for bids, two or more employers of labor, or two or more members of a labor organization, or the awarding officer or official, or five or more residents of the town or towns where the public works are to be constructed, may appeal to the commissioner or his designee from a wage determination, or a classification of employment as made by the commissioner, by serving on the commissioner a written notice to that effect. Thereupon the commissioner or his designee shall immediately hold a public hearing on the action appealed from. The commissioner or his designee shall render his decision not later than three days after the closing of the hearing. The decision of the commissioner or his designee shall be final and notice thereof shall be given forthwith to the awarding official or public body."

decision within three days after the hearing closes. The commissioner's decision on such an appeal is final. *Id.*

Violations of the prevailing wage law by public contractors are governed primarily by G. L. c. 149, § 27C. Section 27C (*a*) provides for criminal penalties, and § 27C (*b*) provides for an alternative regime of civil penalties — warnings and citations — administered by the Attorney General.[12] Section 27C (*b*) (4) sets forth the procedures governing appeals of citations:

> "Any person aggrieved by any citation or order issued pursuant to this subsection may appeal said citation or order by filing a notice of appeal with the attorney general and [DALA] within ten days of the receipt of the citation or order. Any such appellant shall be granted a hearing before [DALA] in accordance with chapter 30A. The hearing officer may affirm or if the aggrieved person demonstrates by a preponderance of evidence that the citation or order was erroneously issued, vacate, or modify the citation or order. Any person aggrieved by a decision of the hearing officer may file an appeal in the superior court pursuant to the provisions of said chapter 30A."

3. *Discussion.* a. *Fourth citation.* Lighthouse argues that because it failed to pay an employee the correct wage rate due to a clerical error, it should not have been cited for a violation of G. L. c. 149, § 27. The argument fails. Like the Wage Act, G. L. c. 149, §§ 148, 150, and the independent contractor statute, G. L. c. 149, § 148B, see *Somers* v. *Converged Access, Inc.,* 454 Mass. 582, 591-592 (2009), the prevailing wage law is a

---

[12]General Laws c. 149, § 27C (*b*) (1), states:

> "As an alternative to initiating criminal proceedings pursuant to [§ 27C (*a*)], the attorney general may issue a written warning or a civil citation. For each violation, a separate citation may be issued requiring any or all of the following: that the infraction be rectified, that restitution be made to the aggrieved party, or that a civil penalty of not more than $25,000 for each violation be paid to the commonwealth, within [twenty-one] days of the date of issuance of such citation. For the purposes of this paragraph, each failure to pay an employee the appropriate rate or prevailing rate of pay for any pay period may be deemed a separate violation, and the pay period shall be a minimum of [forty] hours unless such employee has worked fewer than [forty] hours during that week."

strict liability statute. It specifically provides for civil penalties to be imposed where a contractor or subcontractor has no intent to violate the law. See G. L. c. 149, § 27C (*b*) (2). Under a strict liability scheme, an employer's reason for the violation is irrelevant; the fact of violation is sufficient for a penalty to issue. Cf. *Dixon* v. *Malden*, 464 Mass. 446, 452 (2013), quoting *Somers*, *supra* at 591 ("Employers must 'suffer the consequences' of violating the statute regardless of intent"). Accordingly, the Superior Court judge was correct in affirming the fourth citation.

b. *Authority of the chief administrative magistrate to review and approve a hearing officer's decision in a § 27C (b) (4) appeal before final opinion issues.*[13] Lighthouse contends that the language of § 27C (*b*) (4) makes it plain that the chief administrative magistrate lacks the authority to implement an internal review procedure for decisions of hearing officers in administrative appeals under that section.[14] Lighthouse points specifically to the use in § 27C (*b*) (4) of "hearing officer" in its last two sentences, and argues that the Legislature's choice of "hearing officer" rather than DALA itself means that the decision is

---

[13]The Attorney General argues that Lighthouse's challenges to the DALA hearing process concern only the first three citations and that, accordingly, Lighthouse does not have standing to assert such claims because the DALA decision vacated those citations and Lighthouse suffered no injury. We do not agree that Lighthouse lacks standing. The procedural claims it raises apply to the entire adjudicatory proceeding before DALA, a proceeding that resulted in the affirmance of the fourth citation and, consequently, affirmance of the monetary fine that the citation imposed on Lighthouse. Clearly, Lighthouse is "aggrieved" by that result. See *Board of Health of Sturbridge* v. *Board of Health of Southbridge*, 461 Mass. 548, 557 (2012). In any event, the procedural issues raised by Lighthouse have significance for DALA and potentially for all litigants who are or may become parties to prevailing wage citation appeals conducted by DALA pursuant to § 27C (*b*) (4). The parties here have fully briefed and argued these issues, and we choose to address them. See *Board of Health of Sturbridge*, *supra* at 561-562; *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

[14]The statute establishing DALA and defining the role and responsibilities of its chief administrative magistrate, G. L. c. 7, § 4H, refers to the attorneys whom the chief administrative magistrate employs to carry out the work of DALA as "administrative magistrates," but there is no dispute that these attorneys serve as "hearing officers" in adjudicating administrative appeals. We use the term "hearing officer" here rather than "administrative magistrate" because the statute principally at issue, § 27C (*b*) (4), uses that term.

the responsibility of the hearing officer alone and cannot be subjected to any type of internal agency review.[15] We disagree.

First, § 27C (*b*) (4) itself contains no express language that supports Lighthouse's reading. Rather, the statute provides that a person aggrieved by a citation or order is to be granted a hearing before DALA governed by G. L. c. 30A, and then describes the range of outcomes available to the individual DALA hearing officer conducting that hearing. See note 15, *supra.* When the Legislature has wished to ensure that the decision of an individual hearing officer in an administrative agency is not to be subject to review by anyone else in the agency, including a supervising director, the Legislature has so indicated expressly. See, e.g., G. L. c. 18, § 16 (director of division of hearings within Department of Transitional Assistance is responsible for training referees to conduct adjudicatory hearings under G. L. c. 30A on appeals by aggrieved parties, but "[n]either [the director] nor any other employee of the department shall review, interfere with, change or attempt to influence any hearing decision by a referee").[16] Given these examples, we conclude that the absence of any similar directive in § 27C (*b*)(4)

[15]The portion of § 27C (*b*) (4) on which Lighthouse relies specifically provides that:

> "[t]he hearing officer may affirm or if the aggrieved party demonstrates by a preponderance of the evidence that the citation or order was erroneously issued, vacate, or modify the citation or order. Any person aggrieved by a decision of the hearing officer may [appeal pursuant to G. L. c. 30A]" (emphasis added).

[16]For a similar example, see G. L. c. 118E, § 48 (establishing board of hearings within division of medical assistance under supervision of director to hear appeals concerning medical assistance benefits; "[n]either the director nor any other employee of the division shall review, interfere with, change or attempt to influence any hearing decision by a [hearing] referee"). See also G. L. c. 23B, § 30 (*F*) (establishing division within Department of Housing and Community Development to hear grievances arising from emergency housing assistance program; "[a] hearing held pursuant to this section shall be conducted by a hearing officer designated by the hearings manager and shall be conducted as an adjudicatory proceeding under chapter 30A. . . . No employee shall review, interfere with, change or attempt to influence any hearing decision by a hearing officer. The hearings manager shall be responsible for the fair and efficient operation of the division in conformity with state and federal laws and regulations and may review and discuss with the hearing officers such decisions solely in order to carry out this responsibility"). Cf. G. L. c. 23, § 9T (*e*) (establishing Department of Labor Relations under

should not be ignored: we will not read such a directive into § 27C (*b*) (4) when the Legislature has chosen not to include it. See, e.g., *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 620-621 (1997); *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 75 (1990); *AFSCME, Council 93, Local 419* v. *Sheriff of Suffolk County*, 78 Mass. App. Ct. 249, 250-251 (2010).[17]

Further, G. L. c. 7, § 4H, vests the chief administrative magistrate of DALA with substantial authority over the agency's direction and administration. The statute specifically provides that the chief administrative magistrate is wholly responsible for hiring the staff necessary to do the work of DALA, including administrative magistrates (hearing officers), and assigning them to handle particular types of cases. In contrast to the statutes cited in the previous paragraph and in note 16, supra, there is no language in § 4H limiting the chief administrative magistrate's authority to review decisions of the hearing officers working within DALA. Instead, § 4H provides that "[i]t shall be the responsibility of said chief administrative magistrate to organize his division to provide speedy and fair disposition of all appeals and to establish policies that will encourage and aid parties in limiting and consolidating issues and pleadings to the superior court."[18] A policy providing for internal review of

supervision of director; "[w]hile the director shall have oversight over the performance of hearing officers, arbitrators, and other staff, neither the director nor any other person may interfere with, influence, or overrule any written opinion issued by the division's staff or by the board").

[17]A review of the legislative history of § 27C (*b*) (4) offers some additional support for our interpretation. Section 27C (*b*) (4) was added in 1998. See St. 1998, c. 236, § 7. The legislative debate over the proposed addition centered on which authority or agency should be assigned to hear citation appeals. 1998 House Doc. No. 5746, which ultimately became St. 1998, c. 236, had a companion Senate bill, 1997 Senate Doc. No. 25, § 3. The Senate bill provided that a representative of the Attorney General would oversee the hearing whereas the House bill provided that the hearing would be before DALA. There is no indication that the Legislature debated the intricacies of the term "hearing officer" versus "division of administrative law appeals." State House News Service (Senate Sess.), July 29, 1998, at 1-2.

[18]General Laws c. 7, § 4H, provides in part:

"[The] chief administrative magistrate . . . shall be a person with substantial experience as a trial attorney, [and] shall devote full time to the duties of his office. . . .

"It shall be the responsibility of said chief administrative magistrate to

hearing officers' decisions by other hearing officers and the chief administrative magistrate for purposes of quality control fits within this legislative directive.

That said, it is obvious that any internal review policy must operate within boundaries that respect and protect the capacity of an individual DALA hearing officer to exercise independent professional judgment in hearing and deciding administrative appeals; the integrity of the administrative adjudicatory process demands no less. The hearing officer is the one who presides over the § 27C (*b*) (4) hearing; hears the witnesses who testify and determines their credibility; and finds facts based on the evidentiary record presented. The hearing officer's credibility judgments and findings of fact generally are entitled to deference, and an internal agency review process should not be used to reject or change the findings on the ground that the chief administrative magistrate disagrees with them or would not have made them. Cf. *Andrews* v. *Civil Serv. Comm'n*, 446 Mass. 611, 616 (2006) (in reviewing decision of defendant commission, court "defer[s] . . . to the credibility determinations made by the hearing officer"); *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 92 (1984) (in conducting judicial review of adjudicatory decision regarding unemployment benefits, judge "does not properly act as fact finder"; sole responsibility for finding facts rests with agency). A hearing officer's application of the law to the facts found may properly be

organize his division to provide speedy and fair disposition of all appeals and to establish policies that will encourage and aid parties in limiting and consolidating issues and pleadings to the superior court. Subject to appropriation he may employ such persons as may be required to discharge the responsibilities of the division, including administrative magistrates who shall be members of the bar of the commonwealth and who shall have had trial experience. . . . [S]uch administrative magistrates may be hired either as regular employees of the division or on a consultant basis.

" . . .

"It shall be the responsibility of the chief administrative magistrate to cause a statistical list to be maintained of all matters assigned to each administrative magistrate as relating to any appeals required by law. . . .

"It shall be the responsibility of the chief administrative magistrate to verify that written recommended final decisions are issued within [ninety] days after the record is closed."

the subject of internal review, cf. *Guarino, supra* at 92-93, but there are limits: if the hearing officer's decision reflects a reasoned and reasonable application of the law to the facts, it would be inappropriate for an internal review process to be used to with-hold DALA's issuance of the decision solely because the chief administrative magistrate might reach a different result.[19]

c. *Hearing officer substitution.* A separate but related aspect of Lighthouse's procedural challenge is that because (in the view of Lighthouse) Fletcher's decision was "complete" when she left DALA, Taylor had no authority to substitute herself as the hear-ing officer and cause her own decision rather than Fletcher's to be issued as the DALA decision. A major difficulty with this argument is that its factual premise is incorrect: while Fletcher apparently considered that she had completed her decision months earlier, her decision had not been "issued" by DALA, the term that appears in the final two paragraphs of G. L. c. 7, § 4H, to equate with completion of an administrative appeal referred to DALA. Nor had a copy been delivered or mailed to the parties, as contemplated by G. L. c. 30A, § 11 (7), (8).[20] As such, Fletch-er's decision was not "complete," and the question is whether in such circumstances, another hearing officer (including the chief administrative magistrate) permissibly could take over and decide the Lighthouse appeal on the same administrative record.

Neither § 27C (*b*) (4) nor G. L. c. 30A addresses the question what happens when a hearing officer is not available to complete a decision. The standard adjudicatory rules of practice and procedure set forth in 801 Code Mass. Regs. §§ 1.01 (1998) touch on the issue in 801 Code Mass. Regs. § 1.01(11)(e).[21]

---

[19]Because the DALA decision on Lighthouse's § 27C (*b*) (4) appeal ultimately was prepared by Taylor rather than Fletcher, we do not undertake any review of Taylor's internal review policy as it was applied to Fletcher's draft decision.

[20]Administrative hearings on appeals brought under § 27C (*b*) (4) are to be conducted pursuant to G. L. 30A, the Administrative Procedure Act. Chapter 30A, § 11 (7) and (8), refers to the delivery or mailing of a decision to the parties as a necessary step in its completion.

[21]Title 801 Code Mass. Regs. § 1.01(11)(e) (1998) provides:

"When a Presiding Officer becomes unavailable before completing the preparation of the initial decision, the Agency shall appoint a succes-sor to assume the case and render the initial decision. If the presentation

Taylor, in providing notice to the parties that she was assigning the Lighthouse appeal to herself, made reference to that regulation, but, as Lighthouse suggests, it is doubtful that § 1.01(11)(e) applies to an administrative appeal under § 27C (*b*) (4).[22] Nonetheless, even if the regulation does not apply directly in this case, it offers useful guidance for dealing with a situation — i.e., a hearing officer who conducted the administrative hearing becomes unavailable to complete the decision — that obviously can and does occur. Taylor, as the substitute hearing officer, followed the substance of 801 Code Mass. Regs. § 1.01(11)(e): after a hearing with the parties to explain that there would be a successor hearing officer, she appointed herself to fill that role and decided the Lighthouse appeal on the basis of the previously closed administrative record.[23] A comparison of Fletcher's draft decision and Taylor's decision indicates that Taylor took a different view of the legal principles, which affected the types of factual findings Taylor considered relevant. Lighthouse does not appear to contest Taylor's approach; its challenge is to Taylor's stepping in at all, given that, in Lighthouse's view, Fletcher's decision was complete and constituted the binding administrative decision under § 27C (*b*) (4).[24] We have rejected

---

of evidence has been completed and the record is closed, the successor shall decide the case on the basis of the record. Otherwise, the successor may either proceed with evidence or require presentation of evidence from the beginning. The Agency shall provide without cost to all Parties and the successor a copy of the official verbatim transcript, or completed portions thereof, if not previously provided."

[22]The reason is that 801 Code Mass. Regs. § 1.01(11)(e) appears to be addressing cases in which an independent administrative agency refers appeals to DALA for hearing and an "initial decision" but the agency itself renders the final administrative decision. See, e.g., 115 Code Mass. Regs. § 6.33(2)(i) (2009) (Department of Developmental Services administrative appeal process). In the case of appeals from prevailing wage law citations issued by the Attorney General under § 27C (*b*) (1), DALA alone adjudicates the appeal at the administrative level; there is no referral to the Attorney General or any other administrative agency.

[23]To the extent that an administrative decision turns on credibility determinations, a substitute hearing officer may well be required to hold a hearing. See, e.g., *Bayer Corp.* v. *Commissioner of Revenue*, 436 Mass. 302, 306-309 (2002).

[24]Lighthouse's reliance on *Nessralla* v. *Peck*, 403 Mass. 757 (1989), is misplaced. The indicia of a final decision rendered by a judge who has presided

that challenge, and conclude that Taylor's actions in completing the § 27C (*b*) (4) hearing and administrative decision process were appropriate.

d. *Scope of review in a § 27C (b) (4) appeal of job classification opinion letters issued by DLS.* As previously indicated, after Lighthouse filed its appeal from the Attorney General's citations with DALA, the Attorney General sought and obtained an opinion from DLS on the appropriate job classification — mason or laborer — for certain work performed by Lighthouse employees on the King Philip project. The DALA decision authored by Taylor concluded that the DLS opinion letter was a binding job classification determination not subject to review in a § 27C (*b*) (4) proceeding. See note 8, *supra*. Lighthouse challenges this conclusion before us, arguing that the type of opinion letter by DLS at issue here is simply an informal pronouncement rendered after a job has been bid; that such opinion letters are not properly issued pursuant to G. L. c. 149, § 27; and that, as such, they are not binding on employers such as Lighthouse. The Attorney General and DALA argue otherwise.

For several reasons, we decline to address in this case any question concerning the binding or nonbinding nature and the appropriate scope of review of DLS opinion letters. First, Lighthouse failed to raise the issue directly in its appeal to the Superior Court,[25] and the motion judge did not reach it.[26] Second, the same issue is squarely presented in the Attorney General's separate appeal from the DALA Lighthouse decision that remains pending in the Superior Court. Lighthouse has raised its claim about the purportedly nonbinding nature of DLS

over a jury-waived trial, at issue in the *Nessralla* case, are not the same as the indicia of a final agency decision in an adjudicatory proceeding.

[25]Lighthouse referred to DLS opinion letters in a paragraph included in a count of its complaint, but as the motion judge indicated, the thrust of that count was to assert that Fletcher's decision was final and accordingly to request that Taylor's decision be vacated. Lighthouse made no request for a declaration that DLS opinion letters are not binding.

[26]Lighthouse characterizes the motion judge as indorsing Taylor's view that the DLS job classification opinion letter was binding at least going forward, and not subject to review by DALA. We do not read the motion judge's opinion to do so. Rather, the judge summarized the contents of Taylor's decision on this point simply to demonstrate that Taylor revised the legal analysis of Fletcher's decision, not the factual findings Fletcher had made.

opinion letters in counterclaims it has filed in that case.[27] Furthermore, DLS is also a party to that appeal, and has an obvious interest in the resolution of an issue concerning the binding effect, or not, of its opinion letters.[28] Finally, proper resolution of this issue appears to require a more fully developed factual record than is available here with respect to DLS's practices and the purposes of the DLS opinion letters. See, e.g., *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. 798, 801 n.7 (2003) (declining to consider two issues, in part, because more fully developed record was required); *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 409 (1990).

*Judgment affirmed.*

---

[27] We take judicial notice of the pleadings in the Attorney General's pending Superior Court appeal. See *Jarosz* v. *Palmer*, 436 Mass. 526, 530 (2002).

[28] DLS has expressed that interest in a short amicus brief submitted in the present case.